IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CREANDO LITTLE LANGUAGE EXPLORERS LLC,

     Plaintiff,

v.                                                              20-cv-1051

MONROE STREET ARTS CENTER, INC.,
TARA VERMA,
JAMIE GALE, and
CREATIVE SOUL CLUB,

     Defendants.

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Douglas M. Poland
State Bar No. 1055189
Seep Paliwal
State Bar Number 1091325
Stafford Rosenbaum LLP
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI 53701-1784
dpoland@staffordlaw.com
spaliwal@staffordlaw.com
608.256.0226

*Attorneys for Defendants*

# TABLE OF CONTENTS

Table Of Authorities ................................................................................................ 4

Introduction ........................................................................................................... 1

Complaint Allegations ........................................................................................... 3

Argument ............................................................................................................... 8

    I.    Applicable Legal Standards ......................................................................... 8

        A.    Failure to state a claim under Fed. R. Civ. P. 12(b)(6) ....................... 8

        B.    Failure to plead fraud with particularity under Fed. R. Civ. P. 9(b). ............... 9

    II.    Plaintiff's Complaint Fails to State a Claim under Fed. R. Civ. P. 12(b)(6). ...... 10

        A.    Plaintiff fails to allege a cognizable claim under the Lanham Act, 15 U.S.C § 1125(a). .......................................................................................... 10

            1.    Plaintiff fails to allege use of the mark in interstate commerce. ...................... 11

            2.    Plaintiff fails to allege clear "use" of its logos sufficient to sustain a claim of infringement. ............................................................................. 13

            3.    The Complaint's allegations fail to establish a likelihood of confusion between either of Plaintiff's logos and the Creative Soul Club logo. .................................. 16

            4.    Plaintiff's Complaint is devoid of allegations sufficient to state a Lanham Act claim against Defendants Verma and Gale. ........................................................ 22

        B.    Plaintiff fails to state a claim for violations of Wisconsin's consumer protection and unfair trade practices statutes (Claims II and III). ........................... 23

            1.    Plaintiff fails to state a claim for fraudulent representation under Wis. Stat. § 100.18. ..................................................................................... 23

            2.    Plaintiff fails to state a claim for unfair trade practices under Wis. Stat. § 100.20. ..................................................................................... 26

        C.    Plaintiff fails to state a claim for common-law misrepresentation (Claims IV, V, and VI). ........................................................................................... 30

            1.    Plaintiff fails to state a claim for negligent misrepresentation (Claim IV). ..... 31

            2.    Plaintiff fails to state a claim for strict liability misrepresentation (Claim V). 34

            3.    Plaintiff fails to state a claim for intentional misrepresentation (Claim VI). .... 35

        D.    Plaintiff fails to state a claim for promissory estoppel (Claim VII). ............... 37

    III.    Plaintiff Fails to Plead its Fraud Claims with the Particularity Required by Fed. R. Civ. 9(b). ........................................................................................ 38

        A.    Plaintiff fails to plead its common-law fraud claims with the requisite particularity. ............................................................................................. 38

        B.    Plaintiff fails to plead its Section 100.18 claim with particularity. ................ 39

C.      Plaintiff fails to plead promissory estoppel with particularity. ........................40

Conclusion ...................................................................................................................41

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Norse Chem. Corp.,* 33 Wis. 2d 445, 147 N.W.2d 529 (1967) ............... 29

*Am. Tr. & Sav. Bank v. Philadelphia Indem. Ins. Co.*, 678 F. Supp. 2d 820 (W.D. Wis. 2010) ....................................................................................................................... 35

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................... 8, 39

*Atkins v. City of Chicago*, 631 F.3d 823 (7th Cir. 2011) ................................................. 9

*Bank of Am., N.A. v. Knigh*t, 725 F.3d 815 (7th Cir. 2013) ............................................ 9

*Bank of Sun Prairie v. Esser*, 155 Wis. 2d, 456 N.W.2d 585 (1990) .............................. 36

*Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677 (7th Cir. 1992) ..................... 39

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041 (7th Cir. 2000 .......................... 21

*Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 366 F. Supp. 2d 792 (W.D. Wis. 2005) ............................................................................................................... 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 8

*Borg-Warner Corp. v. York-Shipley, Inc.,* 293 F.2d 88 (7th Cir. 1961) ........................... 15

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007) ........................... 40

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) ..................... 4

*Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686 (2d Cir. 1970), *cert. denied*, 403 U.S. 905 (1971) ................................................................................................. 16

*Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939 (7th Cir. 2013) .................................... 40

*Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589 (7th Cir. 2019) ..................... 10

*Design Inc. v. Synthetic Diamond Technology, Inc.*, 674 F.Supp. 1564 (N.D.Ill.1987) ... 10

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990) .................................................... 9

*EMD Crop Bioscience Inc. v. Becker Underwood, Inc.*, 750 F. Supp. 2d 1004 (W.D. Wis. 2010) ....................................................................................................................... 39

*Emergency One, Inc. v. Waterous Co.*, 23 F. Supp. 2d 959 (E.D. Wis. 1998) ................ 27

*Extang Corp. v. Laurmark Enterprises Inc.*, No. 12-cv-372-bbc, 2013 WL 12234254, at *10 (W.D. Wis. Apr. 11, 2013) ............................................................................... 26

*Fabick, Inc. v. FABCO Equip., Inc.*, 296 F. Supp. 3d 1022 (W.D. Wis. 2017) ............... 12

*Fabick, Inc. v. JFTCO, Inc*., 944 F.3d 649 (7th Cir. 2019) ............................................. 12

*Fox v. Iowa Health Sys.,* 399 F. Supp. 3d 780 (W.D. Wis. 2019) ............................ 25, 30

*Friends of Kenwood v. Green*, 2000 WI App 217, 239 Wis. 2d 78, 619 N.W.2d 271 ..... 33

*Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 401 N.W.2d 816 (1987) .................. 35

*Hackel v. Nat'l Feeds, Inc.*, 986 F. Supp. 2d 963 (W.D. Wis. 2013) .............................. 40

*Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325 (7th Cir. 1977) 16, 20, 21

*Hinrichs v. DOW Chem. Co.*, 2020 WI 2, 389 Wis. 2d 669, 937 N.W.2d 37 ................. 23

*Hoffman v. Red Owl Stores, Inc*., 26 Wis. 2d 683, 133 N.W.2d 267 (1965) ................... 37

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir. 1988) . 14, 16

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427 (7th Cir. 1999) .. 14

*Kailin v. Armstrong*, 252 Wis.2d 676, 643 N.W.2d 132 (2002) ............................... 33, 36

*Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 59 S. Ct. 109 (1938)................................ 18

*Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab.*, 859 F.3d 1023 (Fed. Cir. 2017) ................................................................................................................................ 11

*McLellan v. Charly*, 313 Wis. 2d 623, 758 N.W.2d 94 (Wis. Ct. App. 2008)................ 37

*Megal v. Kohlhardt*, 11 Wis. 2d 70, 103 N.W.2d 892 (1960).......................................... 37

*Mercury Record Prods., Inc. v. Econ. Consultants, Inc.*, 64 Wis. 2d 163, 218 N.W.2d 705 (1974)............................................................................................................................. 27

*Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748 (7th Cir. 2010)..................... 33, 36

*Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990 (7th Cir. 1979).......... 19

*Mountain Crest SRL, LLC v. Anheuser-Busch InBev SA/NV*, 456 F. Supp. 3d 1059, (W.D. Wis. 2020)....................................................................................................................... 9

*Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 288 N.W.2d 95 (1980) ................................. 31

*Puffer v. Welch*, 144 Wis. 506, 129 N.W. 525 (1911) ..................................................... 34

*Reddinger v. SENA Severance Pay Plan*, 707 F.3d 702 (7th Cir. 2013)........................... 37

*Rendler v. Markos*, 154 Wis. 2d 420, 453 N.W.2d 202 (Ct. App. 1990) ......................... 33

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)............................................................. 40

*RTE Corp. v. Coatings, Inc.*, 84 Wis. 2d 105, 267 N.W.2d 226 (1978)........................... 28

*Sears v. Likens*, 912 F.2d 889 (7th Cir. 1990) .................................................................. 10

*Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754 (8th Cir. 2010) ........ 12

*Slaney v. The International Amateur Athletic Federation*, 244 F.3d 580 (7th Cir.2001) ... 9

*Slep–Tone Entm't Corp. v. Elwood Enterprises, Inc.*, 165 F. Supp. 3d 705 (N.D. Ill. 2015) ................................................................................................................................ 12

*Sorensen v. WD-40 Co.*, 792 F.3d 712 (7th Cir. 2015) .................................................... 21

*State v. Automatic Merchandisers of Am., Inc.*, 64 Wis. 2d 659, 221 N.W.2d 683 (1974) ................................................................................................................................ 25

S*toller v. Walworth Cty.*, No. 17-cv-1349-jps, 2020 WL 3618453, at 5 (E.D. Wis. July 2, 2020), appeal docketed, No. 20-2204 (7th Cir. July 7, 2020) ...................................... 26

*Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002)................................................................. 4

*Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, 270 Wis. 2d 146, 677 N.W.2d 233 .. 34, 35, 36

*Uebelacker v. Paula Allen Holdings*, Inc., 464 F. Supp. 2d 791 (W.D. Wis. 2006)......... 24

*Uni\*Quality, Inc. v. Infotronx, Inc*., 974 F.2d 918 (7th Cir. 1992) ................................... 39

*Whipp v. Iverson*, 43 Wis. 2d 166, 168 N.W.2d 201 (1969) .............................. 31, 34, 35

*Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663 (7th Cir. 2008) ....................................................................................... 9

*Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499  (7th Cir. 1992) ................................... 14, 15

**Statutes**

15 U.S.C. § 1125(a) .............................................................................. 2, 6, 10, 11

15 U.S.C. § 1127 ............................................................................................... 11

15 U.S.C. § 117(a) ............................................................................................... 8

15 USCA § 1057(b) ............................................................................................ 15

Wis. Stat. § 100.18...................................................... 2, 6, 8, 23, 24, 25, 39

Wis. Stat. § 100.20 ................................................................ 2, 6, 23, 26, 27, 30
Wis. Stat. § 100.20(1)(1m)-(1v) ........................................................... 26

**Other Authorities**
*Merriam-Webster.com*, 2020 ................................................................ 19
U.S. Const. art. I, § 8, cl. 3 ................................................................. 11

**Rules**
Fed. R. Civ. P. 12(b)(6) ..................................................... 3, 8, 10, 39, 41
Fed. R. Civ. P. 9(b) ............................................................. 3, 9, 38, 41

**Introduction**

To state a claim for unfair competition under federal and state law, a plaintiff must identify in its complaint a proprietary, actionable right protected by law, and wrongful actions taken by the defendant that infringed on or usurped that right. Likewise, to adequately allege and state a claim for misrepresentation, fraud, and promissory estoppel, a plaintiff's complaint must identify specific actionable statements, who made them, and when and where they were made. The Plaintiff's Complaint here fails to allege critical elements of all seven of its claims, and should be dismissed.

Plaintiff Creando Little Language Explorers ("Plaintiff" or "Creando") is a small business located at 1716 Monroe Street in Madison, a newly developed building into which it moved in 2020. Plaintiff offers a Spanish immersion curriculum for children between 2 and 10 that, according to its website, "allows for all our explorers to learn a new language while having fun." Defendant Monroe Street Arts Center ("MSAC") is a small nonprofit local arts center that has provided music and arts instruction and programming to Madison-area youth for 22 years. Beginning in 2019, MSAC conducted a capital campaign to raise funds to relocate to newly constructed space at 1722 Monroe Street, the same building in which Plaintiff is now located, from a location several blocks away. Plaintiff alleges that it sought and received assurances from the developer of the building that no competing businesses would locate there, and that it received assurances from MSAC that it would not engage in programming that competed with Plaintiff's, and based on those assurances, that it held an event to raise funds for MSAC's capital campaign. By June 2020, MSAC raised sufficient funds to move into its new space, and shortly thereafter, partnered with

Defendants Tara Verma and Jamie Gale to begin offering a children's after-school program in music, art, food, and yoga through Defendant Creative Soul Club ("CSC"), an extension of a program previously developed by Verma and Gale. Plaintiff alleges that MSAC induced it to share proprietary information regarding its supposedly unique "five senses learning approach," to contribute monetarily to MSAC's capital campaign, and to grant MSAC access to its business space, and that MSAC and CSC then copied Plaintiff's allegedly proprietary instructional approach to compete with Plaintiff's programming. Plaintiff alleges that these actions violated the Lanham Act, 15 U.S.C. § 1125(a) (Claim I) and Wisconsin's fraudulent representation and unfair competition laws, Wis. Stat. §§ 100.18 and 100.20 (Claims II and III respectively), and constitute common-law negligent, strict liability, and intentional representation (Claims IV, V, and VI, respectively) and promissory estoppel (Claim VII).

Plaintiff's Complaint alleges no actionable claims. Although Plaintiff claims infringement of its logo and advertising materials, its Complaint contains no allegations establishing an actionable right to the intellectual property it identifies as proprietary. It even concedes that it allegedly paid Verma and MSAC Executive Director Carey Zawlocki to participate in Plaintiff's programming as part of an advertising campaign for its own educational services, granting Defendants access to and encouraging them to write about the very proprietary business model that Plaintiff now claims Defendants misappropriated. Moreover, Plaintiff's Complaint is devoid of allegations critical to its claims that MSAC is liable for common-law misrepresentation and promissory estoppel, or that MSAC or the

other Defendants' statements and actions constitute fraudulent representations or unfair competition actionable under Wisconsin statutes.

In sum, Plaintiff's Complaint fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6) for violations of the Lanham Act, Wisconsin common law, and Wisconsin statutory law, and fails to plead its Claims II, IV, V, VI, and VII with the particularity required by Fed. R. Civ. P. 9(b).  Its pleading failures are fatal and cannot be remedied, and this action should be dismissed with prejudice.

### Complaint Allegations

The Complaint alleges the following facts, which the Defendants accept as true solely for the purpose of this motion to dismiss.

Karen Haygood and James Haygood, now members of Plaintiff Creando, a limited liability company, filed articles of organization for the company with the Wisconsin Department of Financial Institutions in October 2013. Compl. ¶ 9. Plaintiff began providing home-based Spanish language instruction in 2014 at several different locations throughout Madison, Wisconsin, including at a rented space on Atwood Avenue. *Id.* ¶ 10. Plaintiff subsequently twice moved locations, and in 2016 rented space on Monroe Street, adjacent to MSAC's location at the time at 2526 Monroe Street. *Id.* ¶¶ 10-11, 19. MSAC is a non-profit entity, as recognized by the United States Department of Revenue, and has provided after-school music and art instruction programming for 22 years. *Id.* ¶¶ 11, 19, 32. Over the years, Plaintiff developed an after-school program based on what it calls "the five-senses learning approach" and advertised this program through online platforms such as Hulafrog and Madison Mom's Blog. *Id.* ¶¶ 12, 13, 15. MSAC Acting Director Carey

3

Zawlocki and Defendant Tara Verma were affiliated with these platforms before their involvement with MSAC and CSC, respectively. *Id.* ¶¶ 15, 16. Plaintiff alleges that MSAC's arts and music programming is "[u]nlike" Plaintiff's "unique, interactive approach." *Id.* ¶ 12.

Plaintiff alleges that in 2014 as part of its advertising campaign, it began using its logo, which it identifies as the following mark, registered with the United States Patent and Trademark Office ("USPTO") under registration number 4563155.  Compl. ¶ 14; *see also* Declaration of Seep Paliwal ("Paliwal Decl."), Ex. 1.[1] It further alleges that CSC's logo, also shown below, is deceptively similar to that of Creando. *Id.* ¶ 35.




---

[1] The Court may consider Plaintiff's mark and USPTO registration summary without converting this motion to dismiss into a motion for summary judgment.  *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) (noting that in deciding a Rule 12(b)(6) motion, it is well-settled that a court may consider "documents attached to a motion to dismiss ... if they are referred to in the plaintiff's complaint and are central to his claim"); *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994). In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

In 2018, Plaintiff looked to move to a new location at 1716 Monroe Street, which is operated by Urban Land Interests ("ULI"), a non-party to this action. *Id.* ¶ 17.  Through discussions with ULI, Plaintiff claims to have learned from ULI that MSAC had already entered into an agreement to move into the same building. Plaintiff alleges that ULI assured it that the two entities would not be providing competing services. *Id.* ¶¶ 18, 20. Plaintiff also alleges that ULI provided it with assurances that ULI was looking out for Creando's best interests, but declined to agree to an exclusivity clause preventing ULI from renting adjacent spaces to Creando's competitors. Plaintiff claims it entered into a 10-year lease with ULI based upon ULI's alleged assurances. *Id.* ¶¶ 21-22.

Planning to move into its new space at 1722 Monroe Street, in 2019 MSAC launched a capital campaign to raise eight hundred fifty thousand dollars ($850,000). *Id.* ¶ 23. Plaintiff alleges that it actively participated in MSAC's capital campaign by hosting a fundraiser at its own new space at 1716 Monroe Street and by contributing money and promoting the campaign on its social media sites. Plaintiff also alleges that it permitted a principal of ULI to bring potential MSAC donors to tour Plaintiff's new space. *Id.* ¶ 24. Further, Plaintiff alleges that members of the MSAC Board of Directors and its then-Executive Director, Monica Wahlberg, engaged in conversations with Plaintiff, and promised that MSAC's programs "would complement and not compete against" Plaintiff's after-school programming. Plaintiff alleges that based upon these promises, MSAC "induced" Plaintiff to share its proprietary education model, means, and methods with MSAC. *Id.* ¶¶ 25-27.

In July of 2020, MSAC announced a collaboration with CSC to provide after-school programming. The Complaint alleges that this collaboration directly competes with and "is a nearly identical copy" of Plaintiff's own programming, but does not set forth any alleged facts identifying or describing how the programs are "nearly identical." *Id*. ¶ 29. In pre-suit conversations in the summer of 2020, MSAC employees Zawlocki and Suzy Baldwin noted to Plaintiff's owners Karen and James Haygood that the CSC programming allegedly "identical" to Plaintiff's was in fact distinguishable from Plaintiffs because, among other reasons, CSC's programming lacks a Spanish-language component. *Id*. ¶ 31.

Plaintiff's Complaint asserts the following claims:

1. Claim I: Unfair Competition/Use of Word, Term, Name, Symbol, or Device Combination 15 U.S.C. § 1125(a) as against Defendants CSC, MSAC, Verma, and Gale

2. Claim II: Violation of the Deceptive Trade Practices Act - Wis. Stat. § 100.18 as against Defendant MSAC

3. Claim III: Unfair Competition - Wis. Stat. § 100.20 as against Defendants MSAC, CSC, Verma and Gale

4. Claim IV: Negligent Misrepresentation as against Defendant MSAC

5. Claim V: Strict Liability Misrepresentation as against Defendant MSAC

6. Claim VI: Intentional Misrepresentation as against Defendant MSAC

7. Claim VII: Promissory Estoppel as Against Defendant MSAC

Plaintiff seeks to recover relief including:

1. An injunction against all Defendants preventing them from (1) using, reproducing, creating, distributing or publicly displaying any of Creando's marks, names, logos or trade dress, including any colorable imitation of Creando's marks and distinct educational programming and teaching methodology, in the advertising (including on the Internet), promotion, or rendering of its services; (2) expressly or impliedly representing itself to customers, potential customers, or the public to be affiliated in any way with Creando; (3) representing by words or conduct that any service provided, offered for sale, sold, advertised, or rendered by the respective Defendant is authorized, sponsored, or endorsed by or otherwise connected with Creando; (4) otherwise infringing on any of Creando's trademark and/or trade dress rights; and/or (5) competing unfairly with Creando in any manner by improperly using any Creando trademark, service mark, or trade dress, or any colorable imitation of any of them, and/or any mark that is likely to cause consumer confusion as to the source of the respective Defendant's services.

2. A holding that Defendants' acts constitute unfair competition and trade dress infringement, as described above; that Defendants' acts are in violation of the Deceptive Trade Practices Act, as described above; that Defendants' acts constitute unfair competition under Wisconsin State law, as described above; that Defendants' acts constitute misrepresentation, as described above; that the Defendants are estopped from engaging in the acts described above.

3. An order requiring the Defendants, jointly and severally, to pay Creando: (1) all profits, gains and advantages obtained by Defendants from the Defendants' unlawful conduct, including profits and corrective advertising damages in an amount to be determined at trial; (2) all monetary damages sustained and to be sustained by Creando as a consequence of Defendants' unlawful conduct, including lost profits, in an amount to be determined at trial; (3) enhanced damages (e.g. pursuant to 15 U.S.C. § 117(a) and Wis. Stat. § 100.18); (4) Creando's costs and disbursements incurred in connection with this action, including reasonable attorneys' fees; of which nothing plead herein shall constitute an election of remedies; (5) Assessing court costs against the Defendants.

Compl. at 17-19.

## Argument

### I.   Applicable Legal Standards

#### A.  Failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if the alleged facts do not state a plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[T]he fact that the allegations undergirding a plaintiff's claim could be true is no longer enough to save

it." *Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011). A plaintiff must plead facts that suggest a right to relief beyond the speculative level. *Id*. at 832. In the absence of such well-pled facts, the complaint must be dismissed. *Mountain Crest SRL, LLC v. Anheuser-Busch InBev SA/NV*, 456 F. Supp. 3d 1059, 1072 (W.D. Wis. 2020) ("'[A] complaint must be dismissed unless it contains a plausible claim.'" (quoting *Bank of Am., N.A. v. Knigh*t, 725 F.3d 815, 818 (7th Cir. 2013)). "This means that the complaint 'must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Id.* (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 667–68 (7th Cir. 2008)).

## B.  Failure to plead fraud with particularity under Fed. R. Civ. P. 9(b).

Federal Rule of Civil Procedure 9(b) "requires the plaintiff to state 'with particularity" any 'circumstances constituting fraud'. Although states of mind may be pleaded generally, the "circumstances" must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Specificity and detail are key. To satisfy Rule 9(b)'s particularity requirements, Plaintiff must allege in addition to the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated. *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 366 F. Supp. 2d 792, 803 (W.D. Wis. 2005) (citing *Slaney v. The International Amateur Athletic Federation,* 244 F.3d 580, 599 (7th Cir.2001)). The pleading requirements for allegations of fraud demand

9

more than a general time frame for these communications. *Id.* at 804. Further, a complaint alleging a material misstatement must specify ***each statement*** alleged to have been misleading and explain the reason why the statement is misleading. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019). Plaintiff cannot generally allege fraud or misrepresentations against all Defendants. "A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (quoting *Design Inc. v. Synthetic Diamond Technology, Inc.*, 674 F.Supp. 1564, 1569 (N.D.Ill.1987)).

## II.  Plaintiff's Complaint Fails to State a Claim under Fed. R. Civ. P. 12(b)(6).

### A. Plaintiff fails to allege a cognizable claim under the Lanham Act, 15 U.S.C § 1125(a).

Claim I of Plaintiff's Complaint alleges that all Defendants engaged in unfair competition in violation of 15 U.S.C § 1125(a). Specifically, Plaintiff asserts that CSC's logo, which it characterizes as "a lightbulb rising on a string," is substantially similar to Creando's logo, which includes a balloon in the shape of the Earth. Compl. ¶¶ 48-50. It also alleges that the inclusion of "Creative" in the name of CSC causes confusion with the name "Creando," which means "creating" in Spanish. *Id*. Plaintiff alleges that the use of similar words and a logo with a floating orb on a string suggest similarity to consumers, and that use of a similar logo in conjunction with similar services insinuates a connection between the two programs. *Id*. ¶ 51, 53-54. Those allegations are facially meritless.

### 1. *Plaintiff fails to allege use of the mark in interstate commerce.*

To sustain a claim under 15 U.S.C § 1125(a), a plaintiff must show that a defendant used in connection with goods or services "any word, term, name, symbol, or device or any combination thereof" in commerce such that there was likelihood of confusion between the parties. 15 U.S.C § 1125(a). Here, Plaintiff claims that the Defendants' use of an allegedly substantially similar name and logo creates confusion between Creando and CSC actionable under the Lanham Act because Creando and MSAC are geographically close and provide similar after-school programming. Compl. ¶¶ 52-54. Not so.

Under the Lanham Act, "the word 'commerce' means all commerce which may lawfully be regulated by Congress." 15 U.S.C § 1127.  Congress, under the Commerce Clause of the Constitution of the United States, has the power to "regulate Commerce with foreign Nations, and *among the several States*, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3 (emphasis added). To sustain a claim under the Lanham Act, including 15 U.S.C § 1125(a), Plaintiff must show that Defendants used Creando's name and logo to create confusion between the parties in *interstate* commerce. *Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab.*, 859 F.3d 1023, 1027-1028 (Fed. Cir. 2017) ("The statutory requirement for use in commerce applies to service marks as well as to trademarks…the "use in commerce" requirement is met when: (1) a mark is "used or displayed in the sale or advertising of services"; and (2) either (i) the services are "rendered in commerce" or (ii) the services are "rendered in more than one State or in the United States and a foreign country and the person rendering those services is engaged in commerce in connection with the services.' 15 U.S.C. § 1127. Therefore, to meet the use

requirement for a service mark, an applicant must use the mark in advertising or sale of a

service, and show that the service was actually rendered in interstate commerce or in more

than one state, or in this and a foreign country, by a person engaged in commerce."); *Slep–*

*Tone Entm't Corp. v. Elwood Enterprises, Inc.*, 165 F. Supp. 3d 705, 710–11 (N.D. Ill.

2015) ("The Lanham Act requires that a mark be both distinctive and used in commerce in

order for it to be eligible for trademark protection. Specifically, the Lanham Act defines

"use in commerce" as the bona fide use of a trademark or service mark in either interstate

or foreign commerce in the ordinary course of trade.") But nowhere in its Complaint does

Plaintiff identify ***any*** services that Creando or Defendants provide beyond the boundaries

of Madison, let alone outside of the state of Wisconsin. The very geographic proximity that

Plaintiff cites as a source of the confusion between the two programs – both programs being

located in the same ***building*** on Monroe Street – belies the exceedingly and exclusively

limited and local nature of Plaintiff's and Defendants' services alike.

Plaintiff also fails to allege that Defendants sufficiently used its logos in commerce,

as defined by the Courts, to make a claim under the Lanham Act. In its Complaint, Plaintiff

only alleges that CSC has used its allegedly similar logo and advertising materials for

promotional purposes, Compl. ¶¶ 35-36, which courts have generally found insufficient to

qualify as "use in commerce." *Fabick, Inc. v. FABCO Equip., Inc.*, 296 F. Supp. 3d 1022,

1038 (W.D. Wis. 2017), *aff'd sub nom. Fabick, Inc. v. JFTCO, Inc.*, 944 F.3d 649 (7th Cir.

2019); *see also Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 762–63

(8th Cir. 2010) ("two customer presentations, a press release, an announcement, and a

website" without any sale or transport of goods containing the mark insufficient to

demonstrate "use in commerce"). Plaintiff alleges no facts to support a claim that Defendants have used a logo substantially similar to its own in conjunction with services provided.

### 2. Plaintiff fails to allege clear "use" of its logos sufficient to sustain a claim of infringement.

In the General Factual Allegations section of its Complaint, Plaintiff identifies the above-referenced logo registered with the USPTO in 2013, registration number 4563155, as a logo that it has used since 2014. Compl. ¶¶ 13-14. When Plaintiff registered its mark in 2013, it specified "language instruction" as the services provided. Paliwal Decl., Ex. 1. Per the specimen Plaintiff provided to the USPTO when filing its registration, it is this first registered logo that is in use on Plaintiff's website, as shown below. Paliwal Decl., Ex. 2.



Yet in Claim I of its Complaint, these are neither the logo nor the services upon which Plaintiff bases its claim of infringement against Defendants. To the contrary, in paragraph 48, Plaintiff identifies a *different* logo as "the Creando logo," pictured below, upon which Plaintiff alleges Defendants have infringed. *Id.* ¶ 48.



Plaintiff fails to clearly allege which logo has been consistently in use, which logo has been used primarily in advertising, or even which logo appears outside its physical location. While it is not required that Plaintiff must have registered this second logo to allege a claim of unfair competition, Plaintiff must show that it has established protectable rights to the mark to make such a claim. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 436 (7th Cir. 1999) ("Such a claim requires a showing that: (1) the defendants have a protectable trademark; and (2) a "likelihood of confusion" will exist as to the origin of the plaintiff's products."). To adequately plead a protectable mark, Plaintiff must allege that the logo was in use in commerce, and through that use, the mark has developed a secondary meaning by which consumers associate the mark with the services Plaintiff provides. *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1085 (7th Cir. 1988). At common law, "use" means sale of a good or service to the public with the mark attached. *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992). Plaintiff alleges that it has used its logo in advertising on its website but identifies two ***separate*** logos in its Complaint, which it interchangeably refers to as "the Creando logo."

14

Plaintiff cannot plausibly demonstrate that its mark has developed a strong secondary meaning without clearly defining *which* logo has the secondary meaning. That failure alone dooms Plaintiff's Lanham Act claim.

But even assuming that Plaintiff's registered logo is the one on which its Lanham Act claim is based, for Plaintiff to enforce its rights through this type of claim, it must show it used this mark. An owner may register a mark with the intent to use it but does not establish rights until the mark has been used. *Zazu Designs,* 979 F.2d at 504. Here, the Complaint does not effectively allege such use. References to the two logos in Plaintiffs' allegations indicate that a logo is in use in some capacity but Plaintiff fails to clearly allege exactly which of the two logos – the one that it registered, or the second logo – is in use. Nor does it establish how this registered mark specifically is in use. Plaintiff's failure to identify which of the two logos is in use or how the registered logo is used makes it impossible for Plaintiff to plausibly allege that it has established rights protectable through registration.

Moreover, if Plaintiff wishes to cite the USPTO registration as protection for its logo, it must show that Defendants are providing similar services to those identified in Plaintiff's registration such that a consumer may confuse the two. 15 USCA § 1057(b); *see also Borg-Warner Corp. v. York-Shipley, Inc.*, 293 F.2d 88, 91 (7th Cir. 1961) (registrations are limited to the goods or services specified in the certificate). But Plaintiff's Complaint, taken together with its logo registration, establishes just the opposite: when registering its logo, Plaintiff represented that the service it provides is "language instruction," whereas

Plaintiff's Complaint acknowledges that CSC was not providing language instruction, as CSC's staff were not speaking Spanish. *Compare* Paliwal Decl., Ex. 1 *with* Compl. ¶ 31.

### 3. The Complaint's allegations fail to establish a likelihood of confusion between either of Plaintiff's logos and the Creative Soul Club logo.

The second element of liability under section 43(a) of the Lanham Act is the existence of a "likelihood of confusion" as to the origin of the alleged infringer's services. *Int'l Kennel Club of Chicago*, 846 F.2d at 1087. Plaintiff bases its Lanham Act claim on a vague similarity between CSC's and Creando's logos, which it describes with limited detail in its Complaint. Compl. ¶ 51. It states, "both logos make use of floating-balloon-on-a-string depictions and both make use of the word 'Creative,' or variations thereon…" *Id*. These allegations are not nearly enough to plausibly suggest consumers would confuse the two logos and therefore the two programs.

The Court considers a variety of factors in assessing the likelihood of confusion, including: (1) the degree of similarity between the marks in appearance and suggestion; (2) the similarity of the goods or services for which the mark is used; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (4) the strength of the complainant's mark; (5) actual confusion; and (6) an intent on the part of the alleged infringer to confuse the consumer. *Helene Curtis Indus., Inc. v. Church & Dwight Co*., 560 F.2d 1325, 1330 (7th Cir. 1977) (citing *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 705 (2d Cir. 1970), *cert. denied*, 403 U.S. 905 (1971)).

There is very minimal similarity between the two marks in appearance or suggestion. Plaintiff deliberately chooses not to compare CSC's logo to its registered logo,

as any comparison between the two would fail a substantial similarity test. This first logo includes a child holding a balloon in the shape of the Earth, while CSC's logo has no human element, as shown below. Compl. ¶ 14, 49; Paliwal Decl., Ex. 1. This alone is enough to distinguish the two logos, and it is obvious why Plaintiff chose not to make a comparison between the two.

   

Comparing Creando's second, unregistered mark to CSC's logo, Plaintiff still fails to show enough similarity to cause confusion or association between the two programs. The Earth in Creando's logo is clearly a balloon, indicated by the tie off at the bottom of the sphere, and the string attached. *Id*. ¶ 48. The lightbulb in CSC's logo has no indication that it is a balloon and the "balloon" association is an assumption made by Plaintiff to try to manufacture some similarity between the two orbs. *Id.* ¶ 49. Indeed, Plaintiff's desperation to create out of whole cloth some similarity extends so far that it describes the line attached to the light bulb in CSC's logo as a "***string***," when anyone reasonably familiar with electric light bulbs would understand that line to represent a ***wire*** and not a string, which is incapable of conducting electricity to power a light bulb. Furthermore, CSC's light bulb not only does not have a balloon tie off, but it distinctly has a screw bottom most commonly associated with a lightbulb. *Id.* And Plaintiff further overreaches by alleging

that the light bulb in CSC's logo is "rising"; but it is common knowledge that light bulbs do not "rise," they are anchored in place. Plaintiff deliberately ignores the defining and distinguishing features between the two logos, and the degree to which it warps elemental and commonly understood attributes of electric light bulbs in its attempt to manufacture some similarity between the balloon in its own logo and the light bulb in CSC's logo is not only futile, it is frivolous.

Plaintiff also alleges that the names of the two programs are substantially similar, as both use a form of the word "creative." As alleged in the Complaint, "Creando" means "creating" in Spanish. Under Plaintiff's allegations and legal theory, the use of similar words is sufficient to create actionable confusion. *Id.* ¶ 51. But that is incorrect as a matter of law, and as a matter of alleged fact here. The most obvious distinguishing factor between the two names is the language difference. Plaintiff assumes that the average consumer will know what "Creando" means, and then will associate the specific meaning of "Creando" as used in Plaintiff's after-school program with the use of the word "creative" by Defendants in another context. Even assuming that the foreign language skills of the average consumer of the after-school programming offered by CSC (which the Complaint does not allege contains foreign language instruction) include Spanish as well as English, mere use of the same word in different formats and contexts is not enough to establish confusion if the word is generic or descriptive. Plaintiff fails to show that it has acquired exclusive right use the term "creative" or any variations thereof, *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 116, 59 S. Ct. 109, 113 (1938), and of course any such suggestion would be absurd. Use of a descriptive or generic term alone cannot give rise to

an unfair competition claim, *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 997 (7th Cir. 1979), and the word "creative" – especially when used in conjunction with after-school children's music and art instruction, which, by definition, are "creative" – is precisely such a term. *See* "art," *Merriam-Webster.com*, 2020, https://www.merriam-webster.com/dictionary/art ("the conscious use of skill and creative imagination especially in the production of aesthetic objects") (last visited 27 Nov. 2020).

Nor can the services that both Plaintiff and Defendants provide serve as the basis for a colorable Lanham Act claim. Even accepting as true for purposes of this motion Plaintiff's allegations that the basic services provided by CSC and Creando are the same—after-school programming and child care – those services are far from unique to Creando or CSC, as after-school child care is ubiquitous throughout the city, state, and country. In the state of Wisconsin alone there are four thousand one hundred forty three (4,143) Licensed Child Care Providers, according to the Wisconsin Department of Children and Families.[2] In Dane County, where both Plaintiff and MSAC are located, there are four hundred eighty four (484) licensed providers.[3] Plaintiff also acknowledges repeatedly in

---

[2] All Counties, Licensed Child Care Directories, Wisconsin Department of Children and Families https://dcf.wisconsin.gov/files/ccdir/lic/pdf/LCC%20Directory.pdf (last accessed November 25, 2020). The Court may take judicial notice of these figures. *See  Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned); *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper.").

[3] Dane County, Licensed Child Care Directories, Wisconsin Department of Children and Families https://dcf.wisconsin.gov/files/ccdir/lic/pdf/Dane.pdf (last accessed November, 25, 2020).

its Complaint that MSAC has provided after-school programming throughout its 22-year existence and raises no issue with MSAC's past programs. Compl. ¶¶ 11, 19. Where Plaintiff takes offense is at the specific programming provided by MSAC's collaboration with CSC, alleging that MSAC never provided programming like that of CSC, and that CSC's programming is "nearly identical" to that of Plaintiff. *Id*. ¶¶ 28-29. Yet both in its description of its allegedly "unique" learning approach and its allegation that CSC's programming is identical, Plaintiff fails to allege any facts describing those elements that make its program distinctive, or any facts describing those elements that CSC allegedly copied. *Id*. ¶¶ 12, 29. Plaintiff cannot allege a likelihood of confusion between the two programs without alleging facts identifying exactly what elements of the two programs create confusion actionable under the Lanham Act.

Moreover, at no point in its Complaint does Plaintiff allege facts that could establish the strength of its logo and branding, which it must do to state a claim under the Lanham Act. Although Plaintiff asserts that its programming is unique and has been successful enough to require expanding its physical space, these assertions do not demonstrate the strength of the logo as a mark. There is no basis in the Complaint's allegations from which the Court could reasonably infer that the success Plaintiff has experienced is based upon its advertising and use of either the registered or unregistered versions of its logo. To assert a likelihood of confusion claim, Plaintiff must demonstrate that consumers actively recognize and associate Creando's logo and name with the services it provides. *Helene Curtis Industries*, 560 F.2d at 1330. Nowhere does the Complaint clearly or plausibly allege this association.

20

Plaintiff also fails to allege any actual confusion. It repeatedly asserts that the similarity of the names, logo designs, and programming will lead consumers to believe that the programs are either the same or are affiliated. Compl. ¶ 36. Yet Plaintiff fails to provide even one example of an instance where a consumer believed CSC to be Creando or associated with Creando in some capacity. While not required to prove actual confusion at this stage of the pleadings, if CSC's infringement were as egregious as Plaintiff alleges, there would be at least one instance to which Plaintiff could cite when confusion occurred. The fact that there is no such example should be considered and given weight. *Helene Curtis Industries*, 560 F.2d at 1330.

Finally, Plaintiff fails to demonstrate that Defendants intended to create confusion between the two programs' branding. Plaintiff alleges that MSAC supports and advertises on behalf of CSC, knowing that such actions cause competitive harm to Creando. Compl. ¶ 36. Yet again, Plaintiff makes the allegation but cites no examples of how MSAC or the other Defendants have acted with intent. The facts that Plaintiff does allege would, if true, show only that Defendants were aware of the existence of Creando's logo. That is not sufficient to prove that MSAC intended to cause confusion or association with Creando. *Sorensen v. WD-40 Co.,* 792 F.3d 712, 731 (7th Cir. 2015) ("Mere knowledge of someone else's mark is insufficient to show intent to pass off."); *see also Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1046 (7th Cir. 2000). Plaintiff alleges that MSAC advertises on behalf of CSC and that is proof of MSAC's intent to deceive. But mere allegations that MSAC conducted this advertising do not constitute allegations that MSAC is aware of any alleged harm that its advertising causes Plaintiff, or that MSAC intends to cause that

alleged harm. CSC after-school programming at MSAC is the result of a collaboration between MSAC and Defendants Verma and Gale. MSAC has its own business stake in the success of that programming. Plaintiff fails to allege or identify any intent by MSAC to conduct advertising specifically to harm Plaintiff, rather than simply ensure the financial success of its business collaboration with CSC, Verma, and Gale.

### 4. *Plaintiff's Complaint is devoid of allegations sufficient to state a Lanham Act claim against Defendants Verma and Gale.*

Plaintiff brings this suit against MSAC and CSC in their professional capacities, and against Defendants Verma and Gale, specifically, in their personal capacities. None of Plaintiff's allegations, however, are directed specifically at Verma and Gale for actions they took outside their alleged roles as partners in CSC. The Complaint alleges that Verma, in a previous professional capacity, had access to details regarding Creando programming. Compl. ¶ 15-16. The Complaint is devoid of any allegations against Gale specifically in any form. All allegations regarding the Defendants' alleged knowledge of and access to details regarding Creando's programming are made as to MSAC alone (not to Verma or Gale), and all allegations regarding the Defendants' alleged actions and services in violation of the Lanham Act are made as to CSC (again, not to Verma or Gale). Plaintiff has failed to allege any of the elements of a Lanham Act claim against Verma or Gale, and the Lanham Act claim against them should be dismissed for this additional reason.

**B. Plaintiff fails to state a claim for violations of Wisconsin's consumer protection and unfair trade practices statutes (Claims II and III).**

Plaintiff alleges in Claims II and III of its Complaint that MSAC violated Wisconsin statutes, specifically Wisconsin's Deceptive Trade Practices Act (Wis. Stat. § 100.18) and Unfair Competition law (Wis. Stat. § 100.20). Plaintiff's allegations, however, fail to state a claim under either provision.

### 1. Plaintiff fails to state a claim for fraudulent representation under Wis. Stat. § 100.18.

To sustain a claim under Wis. Stat. § 100.18, Plaintiff must plead and prove the following elements: (1) MSAC made a representation to one or more members of the public with the intent to induce an obligation, (2) the representation was untrue, deceptive or misleading, and (3) the representation materially induced a pecuniary loss to Plaintiff. Wis. Stat. § 100.18; *Hinrichs v. DOW Chem. Co.*, 2020 WI 2, ¶85, 389 Wis. 2d 669, 706, 937 N.W.2d 37, 56. Plaintiff alleges that MSAC "explicitly assured Creando that it would not host programs competitive with Creando"; that these assurances to Creando constitute public statements within the meaning of the statutes; and that Plaintiff detrimentally relied upon MSAC's statements. *Id.* ¶¶ 62, 67, 69. Plaintiff also alleges that as a result of MSAC's assurances, it was induced to donate and raise money on behalf MSAC's capital campaign, permit potential donors to MSAC's capital campaign to tour its new location, and share with MSAC its proprietary educational program. *Id.* ¶¶ 63-65.

Plaintiff does not allege any false statements that MSAC made sufficient to constitute fraudulent representations under Section 100.18. Plaintiff alleges no facts identifying any express assurances MSAC made when it allegedly stated that it would not

host programs in competition with Plaintiff's. Compl. ¶ 62. Absent such allegations, Plaintiff fails to state a claim. *Uebelacker v. Paula Allen Holdings*, Inc., 464 F. Supp. 2d 791, 805 (W.D. Wis. 2006). To state an actionable claim under Section 100.18, a plaintiff must identify an express statement on which liability may be premised. *Id.* ("Mere implication, however, does not amount to the use of false, deceptive or misleading words as required under Wis. Stat. § 100.18(1).").

Further, the alleged actions of Defendants are not grounds for a claim under Section 100.18. These alleged statements by MSAC to Plaintiff are not the type of statements that the legislature intended to prevent through Section 100.18, or that the statute prohibits. Section 100.18 sets forth clearly and specifically those types of statements that fall within its scope:

> No person, firm, corporation or association, or agent or employee thereof, with intent to ***sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service***, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the ***public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof***, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Wis. Stat. §100.18(1) (emphasis added).   As the Wisconsin Supreme Court has made clear, "[w]e think by this amendment that the legislature intended to protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to **promote the sale of a product**." *State v. Automatic Merchandisers of Am., Inc.*, 64 Wis. 2d 659, 663, 221 N.W.2d 683, 686 (1974) (emphasis added).

But nowhere in its Complaint does Plaintiff allege that MSAC's alleged misrepresentations were made with respect to the sale or distribution of any real estate, merchandise, securities, employment, services, or for their sale, hire, use, or lease. Instead, Plaintiff alleges that MSAC's supposed misrepresentations were made with respect to MSAC's solicitation of **donations** to MSAC's capital campaign.   Similarly, Plaintiff fails to allege that it was induced to purchase any such real estate, merchandise, securities, employment, or services. Consequently, the statements it alleges as the basis for its Section 100.18 claim simply do not fall within the types of representations that the statute regulates.

Plaintiff further fails to allege any "pecuniary loss" it has suffered as a result of MSAC's alleged misrepresentations. Compl. ¶ 69, yet another defect fatal to its Section 100.18 claim. *Fox v. Iowa Health Sys.,* 399 F. Supp. 3d 780, 799 (W.D. Wis. 2019) (plaintiffs alleging a violation of Wisconsin Deceptive Trade Practices Act must allege facts showing that they relied on false statements and that the statements caused them damage). Donating and fundraising on behalf of a capital campaign, and sharing with Defendants its unique educational programming and access to Creando's workspaces does not constitute the type of pecuniary loss defined under Section 100.18. Compl. ¶ 63-65.

### 2. *Plaintiff fails to state a claim for unfair trade practices under Wis. Stat. § 100.20.*

Plaintiff alleges in Claim III that Defendants violated Wisconsin Statute Section 100.20, which generally prohibits unfair trade practices. More specifically, Plaintiff alleges that based on representations made by MSAC that it would not host educational programs competitive with Creando, Plaintiff allegedly shared with MSAC proprietary information, advertising materials, and access to its new business space, which Defendants then allegedly used "to establish and brand a public-private partnership that resulted in the formation of CSC, which is a partnership whose programming and operations are derived directly from and designed to compete against Creando." Compl. ¶ 76. Even assuming these allegations to be true, however, Defendants could not have plausibly engaged in unfair competition in violation of Section 100.20.

As a threshold matter, Plaintiff fails to identify which of the five statutory causes of action under Section 100.20 the Defendants allegedly violated. *See* Wis. Stat. § 100.20(1)(1m)-(1v).  On that basis alone Claim III should be dismissed. Further, under Section 100.20(5), a party may only sue under this statute for violation of an order of the Wisconsin Department of Agriculture, Trade and Consumer Protection. *Extang Corp. v. Laurmark Enterprises Inc.*, No. 12-cv-372-bbc, 2013 WL 12234254, at *10 (W.D. Wis. Apr. 11, 2013). No private cause of action exists under Section 100.20, except for violation of an order issued by the Department under this section. *Stoller v. Walworth Cty.*, No. 17-cv-1349-jps, 2020 WL 3618453, at 5 (E.D. Wis. July 2, 2020), appeal docketed, No. 20-2204 (7th Cir. July 7, 2020) (citing *Emergency One, Inc. v. Waterous Co.*, 23 F. Supp. 2d

959, 971 (E.D. Wis. 1998)). Plaintiff does not allege that Defendants have violated any Wisconsin Department of Agriculture, Trade and Consumer Protection orders regarding fair trade practices, or even that an order prohibiting unfair trade practices has been entered against Defendants. Accordingly, this claim must be dismissed.

As if those fatal flaws were not enough to justify dismissal with prejudice (and they are), Plaintiff's Section 100.20 claim must be dismissed because the Complaint fails to allege the elements of misappropriation required under Section 100.20: 1) the defendants' use of the plaintiff's product, into which the plaintiff has put time, skill, and money; 2) the defendants' use of the plaintiff's product or a copy of it in competition with the plaintiff; and 3) commercial damage to the plaintiff, gaining an advantage in that competition because the plaintiff, and not the defendants, has expended the energy to produce the product. The wrong is not in the copying, but in the appropriation, of the plaintiff's time, effort, and money. *Mercury Record Prods., Inc. v. Econ. Consultants, Inc.*, 64 Wis. 2d 163, 174, 218 N.W.2d 705, 709-710 (1974). Plaintiff's Complaint alleges nothing beyond conclusory allegations to satisfy these required elements. Plaintiff does not plead any alleged facts elaborating on what its "five-senses learning approach" is or how it came to develop this methodology beyond a general summary of efforts taken. Compl. ¶ 12. Nor does Plaintiff allege how Defendants purportedly used Plaintiff's proprietary model in competition with Plaintiff. Rather, Plaintiff's allegations center on how Defendants induced Plaintiff to provide proprietary materials and access to its workspace to MSAC. *Id*. ¶ 74. It does not identify any instance in which Defendants allegedly used Creando's "proprietary means and methods of instruction" to gain a competitive advantage over

27

Plaintiff in the after-school programming market; rather, its allegations are all conclusory. *Id*. ¶¶ 72-78. All Plaintiff alleges is that Defendants supposedly used Plaintiff's proprietary materials to establish and brand CSC. It fails to allege any facts as to how the existence and branding of CSC, specifically based on the information unfairly obtained from Plaintiff, resulted in a commercial benefit for Defendants, or what specifically Defendants gained by use of Plaintiff's proprietary materials. *Id*. ¶ 76. And because Plaintiff does not identify in its allegations how Defendants used its program commercially, it cannot and does not allege any of the commercial damages it claims. *Id*. ¶ 78.

Plaintiff cannot even claim its "proprietary means and methods of instruction," logo, brochures, and advertising materials are trade secrets in the first place. It alleges that it only shared its proprietary information based on representations made by MSAC, after those representations were made. *Id*. ¶¶ 73-74. But Plaintiff cannot claim that it granted MSAC access to proprietary information based upon false representations made during MSAC's capital campaign, when Plaintiff admits itself that it shared such supposed proprietary information with Defendant Verma and MSAC Acting Executive Director Zawlocki for the express purpose of advertisement *years* prior. In the General Factual Allegations section of the Complaint, Plaintiff purports to have paid Verma and Zawlocki to post advertisements for Creando online and write about Creando programming for online blogs. *Id*. ¶¶ 15-16. "Even where a trade secret exists, the law offers no protection against a person who learns the trade secret legitimately and where no duty of confidence is imposed." *RTE Corp. v. Coatings, Inc.*, 84 Wis. 2d 105, 115, 267 N.W.2d 226, 231 (1978). As part of this advertising campaign, Plaintiff itself alleges Verma and Zawlocki had insider access to

Creando's education programming means and methods and proprietary instructional pamphlets. Creando allegedly even invited Verma to attend a free sample of its enrichment classes, to observe the "five-senses learning approach" in action. Compl. ¶ 16. While Plaintiff again fails to allege the dates of these events, it can be reasonably inferred based on the timeline Plaintiff presents that these alleged paid advertisements were published prior to either parties' involvement with the MSAC-CSC partnership.

Any inference that information pertaining to Plaintiff's programming is proprietary such that it is entitled to legal protection is implausible, as Creando has been sharing and publicizing its supposed "unique" programming since at least 2014. Compl. ¶ 13. "The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret. Matters which are completely disclosed by the goods which one markets cannot be his secret." *Abbott Labs. v. Norse Chem. Corp.,* 33 Wis. 2d 445, 457, 147 N.W.2d 529, 535 (1967). Plaintiff does not allege that Verma or Zawlocki were required to sign any type of non-disclosure agreement regarding the supposedly proprietary information they were provided. Based on Plaintiff's allegations that Verma and Zawlocki were paid to advertise the program, it can be reasonably inferred that Creando intended for Verma and Zawlocki to publicly promote and disseminate details regarding Creando's programming. *Id*. It is patently implausible for Plaintiff to claim that Defendants engaged in unfair trade practices with regard to Creando's allegedly proprietary logo, brochures, and advertising materials when it shared those very materials with Verma, Zawlocki, and the public several years prior. Some version of Creando's logo has been in commercial use since at least October 2013. *Id*. ¶

29

14.[4] By Plaintiff's own admission, it regularly advertised on websites and blogs. *Id*. ¶ 14. It is impossible for Defendants to have infringed upon proprietary materials that were not protected or kept confidential, and therefore any alleged violation of Section 100.20 is implausible.

As with Plaintiff's failure to include allegations stating a Lanham Act claim against Defendants Verma and Gale, Plaintiff's Complaint similarly lacks *any* allegations – much less allegations sufficient to state a claim – that Verma and Gale violated Section 100.20 in their individual capacities. As noted above, the Complaint alleges only that Verma, in a previous professional capacity, had access to details regarding Creando programming, Compl. ¶ 15-16, and is devoid of any allegations against Gale specifically in any form. All allegations regarding the Defendants' alleged knowledge of and access to details regarding Creando's programming are made as to MSAC alone – not to Verma or Gale – and all allegations regarding the Defendants' alleged actions and services in violation of Section 100.20 are made as to CSC, again, not to Verma or Gale. Plaintiff has failed to plausibly allege *any* of the elements of a Section 100.20 claim against Verma or Gale, and Claim III against them – and all Defendants – should be dismissed.

### C.  Plaintiff fails to state a claim for common-law misrepresentation (Claims IV, V, and VI).

A claim for common-law misrepresentation under Wisconsin law requires a plaintiff to plead and prove that: (1) the defendant made a representation of fact; (2) it was untrue; and (3) the plaintiff relied on it to their detriment. *Fox,* 399 F. Supp. 3d at 798. All three of

---

[4] *See* Paliwal Decl., Ex. 1 (date of "First Use" and "Use In Commerce" is October 16, 2013).

Plaintiff's common-law misrepresentation claims (intentional, negligent, and strict liability) require Plaintiff to plead and prove these three elements to prevail. *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 25, 288 N.W.2d 95, 99 (1980) (citing *Whipp v. Iverson*, 43 Wis. 2d 166, 169-170, 168 N.W.2d 201, 203-204 (1969)). In its three common-law misrepresentation claims (Claims IV, V, and VI), Plaintiff fails to plead that MSAC made actionable representations to Creando, and that reliance upon representations from MSAC resulted in Creando sustaining an actual injury and incurring damages.

### 1. *Plaintiff fails to state a claim for negligent misrepresentation (Claim IV).*

Plaintiff fails to state a claim for negligent misrepresentation, as it fails to plausibly allege that MSAC had a duty of care to Creando and that it breached that duty. To state a negligence claim against MSAC, Plaintiff must allege that MSAC failed to exercise ordinary care in making a misrepresentation to it. To do so, however, requires Plaintiff to first establish that MSAC had a duty of care or voluntarily assumed such a duty. *Whipp v. Iverson,* 43 Wis. 2d at 170. In support of its negligent misrepresentation claim, Plaintiff alleges the same misrepresentations on which it bases its other claims, i.e., that MSAC misled Creando to believe that it would not enter into direct competition with Creando, while developing the CSC partnership with the other Defendants. Compl. ¶¶ 80, 82. As a result of these alleged misrepresentations, Plaintiff alleges that it donated to and fundraised on behalf of MSAC's capital campaign, and that it shared proprietary information with MSAC's employees. *Id*. ¶ 81. Plaintiff fails, however, to allege facts plausibly establishing that MSAC had a duty of care to Creando, or that MSAC assumed a voluntary duty. Aside from a history of neighboring locations, and a few unspecified conversations between the

31

businesses in early 2019, MSAC had no established relationship with Creando. *Id*. ¶¶ 11, 25-29. Because the Complaint allegations fail to allege that MSAC had an established duty to Plaintiff, or that MSAC voluntarily assumed such a duty, Plaintiff could not have plausibly relied on any alleged representations by MSAC, its board of directors, or its staff.

As stated above, Plaintiff bases its claim based upon alleged assurances that MSAC would not enter into direct competition with Creando next door to Creando's new 1716 Monroe Street location. Compl. ¶ 80. Plaintiff, however, cannot claim that it detrimentally relied upon the misrepresentations of MSAC, as a number of those alleged assurances it cites were made not by MSAC staff or board members per Plaintiff's Complaint. Rather the Complaint alleges that the staff of ULI, Plaintiff's landlord, made representations that MSAC would not host competitive programming. *Id*. ¶¶ 17-18, 20-22. ULI owns the building housing 1716 Monroe Street (Plaintiff's current location) and 1722 Monroe Street (MSAC's current location, where it hosts CSC programming). *Id.* ¶¶ 17-18.

Plaintiff alleges that it first learned of MSAC's new location through discussions with ULI in 2018. Per Plaintiff's allegations, it was ULI that reassured Creando that MSAC would not provide after-school programming that would compete with Creando's, and that MSAC would only continue to provide the same type of music and arts programming it had provided in the past. *Id*. ¶ 18. Plaintiff further alleges that despite initially stepping away from the ULI location because of concerns over potential competition, it only regained interest in the space after ULI made specific and express representations that MSAC would not offer competitive programming at its new location. *Id*. ¶ 20. It was based upon ULI's reassurances that Plaintiff alleges it entered into a 10-year lease with ULI in

March 2019, and paid ULI one hundred seventeen thousand dollars ($117,000) to build out Creando's new space. *Id*. ¶ 22. Plaintiff alleges no facts to support any claims that it relied upon misrepresentations by any of the Defendants prior to choosing to relocate to its 1722 Monroe Street. Yet Plaintiff cites this geographic proximity as one of the causes of its alleged damages. Compl. ¶ 41-43. Plaintiff also claims it relied upon MSAC's representations when it permitted tours of Creando's new space to support MSAC's capital campaign. *Id*. ¶ 63, 74. Per the Complaint's allegations, however, it was Tom Neujahr, a principal of ULI, who conducted these tours. *Id*. ¶ 24.

Plaintiff pleads no plausible basis for asserting misrepresentation claims against MSAC based on its reliance on a third party's statements. "Wisconsin law requires that a fraud plaintiff prove that his reliance is reasonable… When determining whether reliance is reasonable, the court essentially determines whether the plaintiff had the right to rely on the representations." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 767 (7th Cir. 2010) (citing *Kailin v. Armstrong*, 252 Wis.2d 676, 643 N.W.2d 132, 145–46 (2002)). Plaintiff alleges that it made significant financial decisions based on the representations of its landlord, ULI, which it shares in common with MSAC. But Plaintiff had no right to rely on the representations of ULI for the purpose of establishing any legal duty or obligation of MSAC. *Friends of Kenwood v. Green*, 2000 WI App 217, ¶13, 239 Wis. 2d 78, 86, 619 N.W.2d 271, 275 (a complaint pleading negligent or intentional misrepresentation must allege that the defendant misrepresented a fact to the plaintiff or to a third person with the intent that it would be communicated to or influence the plaintiff); *see also Rendler v. Markos*, 154 Wis. 2d 420, 429, 453 N.W.2d 202, 205 (Ct. App. 1990); *Puffer v. Welch*,

144 Wis. 506, 512, 129 N.W. 525, 527 (1911). Plaintiff alleges no facts that it was Defendants' intent for ULI to share this information with Plaintiff with the intention of deceiving Plaintiff.

Finally, Plaintiff fails to allege actual injury and damages. The Complaint merely alleges in conclusory fashion that Plaintiff has "been harmed in an amount to be determined at trial." Compl. ¶ 84.  Such allegations fail to allege a cognizable injury or damages. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶16, 270 Wis. 2d 146, 158, 677 N.W.2d 233. Accordingly, Claim IV should be dismissed.

### 2. *Plaintiff fails to state a claim for strict liability misrepresentation (Claim V).*

Plaintiff's claim of strict liability misrepresentation fails to plausibly allege the elements of a claim under Wisconsin law.

> In strict responsibility, the misrepresentation must be made on the defendant's personal knowledge or under circumstances in which he necessarily ought to have known the truth or untruth of the statement and the defendant must have an economic interest in the transaction. Intent to deceive and good-faith belief in the truth of the representation are immaterial. In this classification the speaker is supposed to possess complete knowledge of the facts or could normally be expected to know them without investigation.

*Whipp v. Iverson*, 43 Wis. 2d at 169–70.

Plaintiff again alleges here that MSAC board members and staff stated to Creando that MSAC would not enter into direct competition with Creando's services, when MSAC was simultaneously developing a partnership with CSC. Compl. ¶¶ 86, 88. And again, Plaintiff fails to identify any statements upon which Creando relied to its detriment. Plaintiff also fails to plausibly allege how MSAC stood to gain economically from such a

misrepresentation. "The plaintiff must demonstrate that 'defendant stood to make a financial gain' as the result of the plaintiff's participation in the transaction," *Am. Tr. & Sav. Bank v. Philadelphia Indem. Ins. Co.*, 678 F. Supp. 2d 820, 825 (W.D. Wis. 2010) (citing *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 331 n.13, 401 N.W.2d 816, 827 (1987)). The Complaint provides no details as to dates on which Creando donated funds to MSAC's capital campaign or hosted fundraisers, amounts that it donated or raised on behalf of MSAC, or instances when it shared proprietary information with MSAC's employees. Plaintiff cannot plausibly allege that MSAC had an economic interest in making such alleged misrepresentations without identifying how much MSAC gained, or stood to gain, by making false statements to Creando.

And again, Plaintiff fails to allege a legally cognizable injury or damages. Compl. ¶ 90.  *See Tietsworth*, 2004 WI 32, ¶16, 270 Wis. 2d at 158, 677 N.W.2d 233. Consequently, its Claim V should be dismissed.

### 3.   *Plaintiff fails to state a claim for intentional misrepresentation (Claim VI).*

In its Complaint, Plaintiff fails to plausibly allege an intentional misrepresentation by MSAC or any damages suffered as a result of any allegedly false or misleading statements that MSAC made to it. Compl. ¶¶ 91-96. To plead intentional deceit, Plaintiff must allege that MSAC knew its representations were untrue, or were made recklessly without caring whether those statements were true or false, and with intent to deceive and induce Creando to act upon those statements to its detriment. *Whipp v. Iverson*, 43 Wis. 2d at 169. Plaintiff alleges that MSAC represented "among other things, it would not enter

into direct competition with Creando" but fails to identify any specific statements made by MSAC, its staff, or its board members. Compl. ¶ 92. It asserts in only conclusory fashion that MSAC knew such statements were false as it had already begun to develop a partnership with the other Defendants. *Id.* ¶ 93. Yet Plaintiff identifies no specific dates on which MSAC allegedly made statements to Creando, nor does it allege any dates or relative period of time when MSAC entered into development of its CSC programming. If Plaintiff cannot cite to what representations were made or when they were made, it cannot plausibly allege that MSAC intentionally misled Creando, nor can it plausibly allege that MSAC's statements were indeed false at the time they were made. And again, Plaintiff fails to allege a legally cognizable injury or damages that it incurred as a result of its reliance on MSAC's alleged misrepresentations. *Id.* ¶ 96. *See Tietsworth*, 2004 WI 32, ¶16, 270 Wis. 2d at 158, 677 N.W.2d 233.

Further, Wisconsin law requires that Plaintiff allege that its reliance upon such misrepresentations was reasonable. *Metavante Corp.*, 619 F.3d at 767; *See also Kailin,* 252 Wis. 2d at 145–46; *Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 456 N.W.2d 585, 589 (1990). When determining whether Plaintiff has plausibly alleged this element of its claim, the Court must consider all the facts and circumstances, "including the intelligence and experience of the misled individual and the relationship between the parties," and whether the plaintiff had the right to rely on the representations. *Metavante Corp.*, 619 F.3d at 767. But Plaintiff's Complaint contains no allegations plausibly demonstrating that its reliance upon MSAC's alleged representations was reasonable. As noted above, the Complaint pleads a minimal neighborly relationship between the two businesses, primarily consisting

36

of conversations and interaction during MSAC's capital campaign in 2019. Compl. ¶¶ 23-27. It is not plausible that such a relationship would induce a business such as Creando to make a financial decision involving hundreds of thousands of dollars. *Id.* ¶ 22. Plaintiff also cannot plead naiveté with regard to business acumen or experience. It cites at least six years of successful business operation in the Madison area. *Id.* ¶¶ 10, 17. It also alleges that it was concerned enough about competition to reconsider moving to 1722 Monroe Street when ULI allegedly informed Plaintiff that MSAC would be its neighbor and asked ULI to grant Creando an exclusivity clause in its lease. *Id.* ¶¶ 18, 20-21. Contrary to what its claim requires, Plaintiff's allegations establish that it has the business experience and savvy not to rely upon the alleged assurances of a potential competitor. Any alleged reliance by Plaintiff on statements that MSAC allegedly made to it is both unreasonable and implausible. Count VI should be dismissed.

### D. Plaintiff fails to state a claim for promissory estoppel (Claim VII).

To succeed on its promissory estoppel claim, Plaintiff must plead and prove that: (1) a promise was made where MSAC could reasonably expect to induce action or forbearance of a definite and substantial character on the part of the Creando; (2) the promise induced such action or forbearance; and (3) injustice can only be avoided by enforcing the promise. *Reddinger v. SENA Severance Pay Plan*, 707 F.3d 702, 709 (7th Cir. 2013); *see also Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 133 N.W.2d 267, 275 (1965); *McLellan v. Charly*, 313 Wis. 2d 623, 758 N.W.2d 94, 107–08 (Wis. Ct. App. 2008). Moreover, a plaintiff must allege the facts giving rise to the promissory estoppel. *Megal v. Kohlhardt*, 11 Wis. 2d 70, 82, 103 N.W.2d 892, 898 (1960).

Plaintiff fails to sufficiently allege that MSAC made such promises, and in turn, fails to plausibly allege that promises made by MSAC influenced its actions or caused any injustice. Plaintiff's Complaint contains nothing more than general, conclusory allegations to support its claim that MSAC would not engage in competitive programming, identifying no specific misrepresentations. Compl. ¶ 97-103. Further, Plaintiff allege no facts that could plausibly establish that MSAC should have reasonably expected Creando to act on those unidentified promises, or that it was reasonable for Creando to rely upon them. Nor does Plaintiff allege any causal connection between the alleged conversations it had with unidentified MSAC staff and board members and any damages it incurred. In fact, Plaintiff does not even allege any specific harm it endured as a result of MSAC's promises. *Id*. ¶ 102. Consequently, Plaintiff's Complaint fails to plausibly allege a claim against MSAC for promissory estoppel.

**III.     Plaintiff Fails to Plead its Fraud Claims with the Particularity Required by Fed. R. Civ. P. 9(b).**

      **A.  Plaintiff fails to plead its common-law fraud claims with the requisite particularity.**

Claims IV-VI allege fraudulent behavior by Defendant MSAC, namely, intentional, strict liability, and negligent misrepresentation, upon which Creando relied to its detriment. Pursuant to Fed. R. Civ. P. 9(b), such claims must meet a heightened pleading standard, and the circumstances constituting fraud or mistake must be plead with particularity. This requires Plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni\*Quality, Inc. v. Infotronx, Inc*., 974 F.2d 918,

923 (7th Cir. 1992) (citing *Bankers Trust Co. v. Old Republic Ins. Co*., 959 F.2d 677, 683 (7th Cir. 1992)).  In all three claims of misrepresentation, Plaintiff fails to allege the "when, where, and how" elements. Compl. ¶¶ 80, 82, 86, 88, 92, 93, 98. When pleading negligent misrepresentation in Claim IV, Plaintiff alleges that MSAC represented that it would not entered into direct competition with it, "among other things," but does not elaborate further as to what those other representations were. Nor does Plaintiff allege who made the representations on behalf of MSAC that MSAC would not compete with Creando, when that statement was made, or how that representation was communicated to Plaintiff. *Id*. ¶ 80. Plaintiff also alleges that MSAC was already developing its program with CSC "at the time [MSAC] represented to Creando" that it would not compete, but fails to identify any dates or times when these alleged statements were made, or again who made them or how they were communicated. *Id*. ¶ 80. Plaintiff uses these same phrases when alleging strict liability and intentional misrepresentation. *Id*. ¶¶, 86, 88, 92, 93. "[T]o survive a motion to dismiss, a plaintiff must allege specific facts to suggest plausibly that a defendant had knowledge of the mismarking." *EMD Crop Bioscience Inc. v. Becker Underwood, Inc.*, 750 F. Supp. 2d 1004, 1020 (W.D. Wis. 2010) (citing *Iqbal*, 556 U.S. at 667 (holding that to defeat motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face")). Plaintiff fails to do so.

### B.  Plaintiff fails to plead its Section 100.18 claim with particularity.

Plaintiff's claim under Wis. Stat. § 100.18 does not meet the heightened pleading standard requiring a claim of fraud to be pled with particularity. *See Hackel v. Nat'l Feeds,*

*Inc.*, 986 F. Supp. 2d 963, 978 (W.D. Wis. 2013). Plaintiff claims that MSAC allegedly misled Creando and the public during its capital campaign, making "explicit assurances" that it would not compete with Creando. Compl. ¶ 62. Yet the Complaint fails to provide any further details as to these "explicit assurances," failing to meet the particularity requirements as to who made the assurances, when and where those assurances were made, and how MSAC misled Creando.

### C. Plaintiff fails to plead promissory estoppel with particularity.

As with its claims of misrepresentation, Plaintiff fails to plead with particularity the alleged facts upon which it claims promissory estoppel. Here, Plaintiff's claim of promissory estoppel is subject to the same heightened pleading standard as the misrepresentation claims. "A claim that "sounds in fraud"—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing *Rombach v. Chang*, 355 F.3d 164, 170–71 (2d Cir. 2004)). As Plaintiff's promissory estoppel claim emerges out of an allegation of a pattern of fraudulent conduct, the claim falls under the Fed. R. Civ. P. 9(b) requirement that allegations of fraud must be pled with particularity. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013).

In its Complaint, Plaintiff merely alleges a vague statement that MSAC promised it would not engage in competitive programming with Creando. Compl. ¶ 98. Plaintiff fails to allege to any specific promises upon which it relied, who made such promises, and when those promises were made. It cannot plausibly claim to have relied upon vague and generic

promises not to compete, allegedly made by a neighboring business, which it already knew to provide after-school programming in some form. Without specificity of the alleged promises, Plaintiff cannot demonstrate what actions it took based upon MSAC's statements. And again, not only does Plaintiff fail to specific what promises it relied upon, it fails to show specifically how reliance on these alleged promises caused it harm. Without clear and specific examples of the damages incurred as a result of MSAC's alleged promises, Plaintiff fails to plausibly allege that injustice has occurred, and the Court should dismiss its claim for promissory estoppel.

### Conclusion

Plaintiff's Complaint is devoid of any claims that survive scrutiny under the applicable pleading standards.  Plaintiff both fails to allege plausible violations of federal and state law – requiring dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6) – and fails to plead the claims subject to the heightened pleading standard of Fed. R. Civ. P. 9(b) with the particularity required by Rule 9(b). Not only should this action be dismissed, it should be dismissed with prejudice; the deficiencies in the Complaint are both fundamental and legion, and no amount of re-pleading can fix them. The Defendants are individuals, a non-profit community arts center, and a collaboration between the three. The continued expense that would be caused by allowing a fatally deficient set of claims to be amended would work an extreme prejudice on the Defendants, and is entirely unwarranted. Dismissal with prejudice is appropriate, as is awarding the Defendants' their costs of moving to dismiss the Complaint.

Dated:  November 30, 2020

STAFFORD ROSENBAUM LLP

*/s/ Douglas M. Poland*
Douglas M. Poland
SBN 1055189
Seep Paliwal
SBN 1091325
Attorneys for Defendants

222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI 53701-1784
dpoland@staffordlaw.com
spaliwal@staffordlaw.com
608.256.0226