## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

CREANDO LITTLE LANGUAGE
EXPLORERS, LLC,

               Plaintiff,

    v.                            Case No. 3:20-CV-1051-wmc

MONROE STREET ARTS CENTER,
INC., *et al.*

               Defendants.

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Travis James West SBN 1052340
Benoit M. Letendre SBN 1079792
114 East Main Street, Suite 211
P.O. Box 37
Waunakee, Wisconsin 53597
Ph. (608) 535-6420
Email: twest@westdunn.com
       bletendre@westdunn.com

Attorneys for Plaintiff Creando Little
Language Explorers, LLC

Plaintiff, Creando Little Language Explorers, LLC, by its attorneys West & Dunn, as and for its First Amended Complaint against Defendants Monroe Street Arts Center, Inc., Creative Soul Club, Tara Verma, and Jamie Gale alleges as follows:

## INTRODUCTORY STATEMENT AS TO FEDERAL JURISDICTION

1. **This First Amended Complaint contains no causes of action arising under federal law, and thus deprives the Western District of Wisconsin of subject matter jurisdiction.**

2. The plaintiff filed its initial complaint in Dane County Circuit Court on October 16, 2020, stating seven state-based claims and a single federal claim for violation of the Lanham Act. The defendants thereafter removed this action to federal court on November 19, 2020, on the basis of this sole federal claim.

3. Following removal, the defendants filed a 48-page motion to dismiss, over half of which focused on the plaintiff's Lanham Act claim. The defendants devoted a substantial portion of their brief to convincing the court to weigh the facts in their favor rather than construe them as true for the purposes of adjudicating the motion to dismiss. However, the plaintiff acknowledges that defendants' argument that the court should narrowly construe the Lanham Act to conclude that the plaintiff did not, and could not, have used its service mark in interstate commerce. Although this argument accurately captured the predominant argument prior to 2016, the Federal Circuit's decision in *Christian Faith Fellowship Church v. Adidas AG*, 841 F.3d 986 (Fed. Cir. 2016) dramatically expanded the scope of the Lanham Act to cover activities and marks that had previously not been considered to be governed by the Act.

4.      Although the Federal Circuit's decision opens the door for the plaintiff's claim, the Seventh Circuit has not yet weighed in on this shift in the legal landscape. While Creando is confident it would ultimately prevail, it does not have the advantage of being represented by the law firm that employs the former president of its board of directors.[1]  It is therefore at a substantial economic disadvantage. Accordingly, Creando has made the strategic decision to abandon the Lanham Act claim in favor of the seven remaining state law claims.

5.      As a result of Creando's decision not to replead its sole federal claim, the Western District of Wisconsin no longer has subject matter jurisdiction over this dispute, and it must be remanded for resolution by the Dane County Circuit Court.

## PARTIES

6.      Creando is a Wisconsin limited liability company with a principal business address of 1716 Monroe Street, Madison, WI 53711.

7.      Defendant Monroe Street Arts Center, Inc. ("MSAC"), is a Wisconsin corporation operating as a nonprofit entity under IRC section 501(c), with a principal business address of 1722 Monroe Street, Madison, WI 53711.

8.      Defendant Tara Verma is an adult resident of the State of Wisconsin who resides at 721 Cone Flower Street, Middleton, Wisconsin 53562.

---

[1]      In addition to his former role as the president of MSAC's board of directors, lead counsel for the defendants publicly holds himself out to be a member of MSAC's Capital Campaign from 2019 to the present.  Given Mr. Poland's role, the plaintiff believes  he is disqualified from representing the defendants as he is virtually certain to be deposed as a witness in this matter.

9.      Defendant Jamie Gale is an adult resident of the State of Wisconsin who resides at 5413 Jonquil Court, Middleton, Wisconsin 53562.

10.     Defendant Creative Soul Club ("CSC") is a partnership between Defendants Verma and Gale, with a principal business address of 1722 Monroe Street, Madison, WI 53711.

## JURISDICTION AND VENUE

11.     The causes of actions set forth in this complaint state legal, statutory, or equitable claims arising under the laws of the State of Wisconsin.  As no federal claim is stated, the US District Court for the Western District of Wisconsin lacks subject matter jurisdiction over this matter.

12.     As the causes of action set forth in the complaint state legal, statutory, or equitable claims arising under the laws of the State of Wisconsin, the circuit courts of the State of Wisconsin have subject matter jurisdiction over this matter.

13.     The courts of the State of Wisconsin have personal jurisdiction over the Defendants because Defendants either reside in the State of Wisconsin or have their principal place of business in the State of Wisconsin.

14.     Venue in Dane County is proper because the acts giving rise to Plaintiff's Complaint occurred in Dane County.

## FACTS COMMON TO ALL CLAIMS

I.      **Creation of Creando Little Language Explores**

15.     Creando was organized in October of 2013, when Karen Haygood and James Haygood, now members of Creando, filed articles of organization for the company with the Wisconsin Department of Financial Institutions.

16.     In 2014, Creando started a home-based and after-school language and childhood development program in several locations in Madison and one permanent rented space on Atwood Avenue. Beginning in 2015, Creando rented space on Lakeside Street in Madison, after which it relocated to a building on Monroe Street that was on the adjacent block down the street from and in line-of-site of MSAC's facilities at 2526 Monroe Street.

17.     While at the Monroe Street address Creando daily observed the after-school programs operated by MSAC, which consisted of traditional music and art instruction classes.

II.     **Development of Creando's Unique Five Senses Approach to Learning**

18.     Creando member Karen Haygood began working in the field of education in 2007. She initially worked with children under the age  of five in Lima, Perú, and then transitioned to working with children of all ages in the United States. Her experience includes work in and with both public and private preschools and elementary schools.  In the United States she has worked with schools and children in the Janesville, Waunakee, Middleton and Madison School Districts.  She has published children's educational books on a national level since at least 2013.

19.     At times in her career, Mrs. Haygood has taught both English as a second language to native Spanish speaking children, and also Spanish as a second language to native English speaking children.   In that capacity, she observed that for children to really learn and understand vocabulary, they needed to live with and experience the words they were being taught through their five senses to develop a true and deep understanding of the language. Children struggle to understand how language and vocabulary practically work without real world experience through meaningful and memorable activities.

20.     Over years of study and observation, Mrs. Haygood first learned, and then proved, that children benefit from this approach to learning in more areas than just language study.   Rather, the application of this principle can -- and Creando believes should -- be applied more broadly to learning in all facets of children's learning.

21.     The Haygoods founded Creando in 2013, and immediately began refining the principles learned through Mrs. Haygood's research and observations into a teaching methodology that they eventually called the Five Senses Learning Approach ("FSLA").   The methodology is more than just haphazardly encouraging students to "use their five senses." Rather, it consists of a systematic and researched approach that has been developed and refined over approximately 14 years. The FSLA utilizes a unique and proprietary teaching methodology that involves the use of language, STEM, physical activity, and the arts in a particular manner that was developed by Creando. Moreover, beginning in 2014, Creando began to refine the FSLA to meet the specific needs of the children most likely to use its programming in Madison, Wisconsin.

22.     Although Creando's programming is often referred to as just a "Spanish class" by the defendants, it is in fact substantially more. The FSLA incorporates a curriculum of explorations that creates the real-world memorable experiences that permit children to "live" the things they learn -- including, but not limited to the Spanish language.  Through these experiences, teachings become a part of the students' lives rather than just memorized facts.  Although bilinguality is a component of the FSLA, the methodology creates a unique opportunity for children to also learn about math, science, reading, music, art, movement, culture, and more.

23.     Creando has developed a program to ensure that its teachers, assistant teachers, and staff adhere to the requirements of the FSLA.  However, the full methodology, research, and analysis underpinning the FSLA is not, and has not been, disclosed to anyone other than the Haygoods and managers of the after-school program.  It remains a trade secret known only to Creando's members.

24.     The FSLA is unlike MSAC's traditional music and art instruction classes. Creando's after-school programs center on a unique, interactive approach to learning that its owners developed over years of trial and error. Creando developed the learning technique, known as the five senses learning approach, through the development of relationships with school administrators as well as extensive research concerning operations, locations, and transportation services required to meet the needs of families involved in its programs.

### III.     Development of Creando Logo and Brand

25.     Since its creation, Creando has made active and continuous use of its logo and essential elements thereof in its branding and advertising.  Creando's original logo is registered with the United States Patent and Trademark Office ("USPTO") under registration number 4563155 (the "Original Logo").

26.      This Original Logo consisted of the word Creando, meaning "creating" in Spanish, in large print, with the words Little Language Explorers beneath it.  To the right of this text, the logo includes a round balloon rising on a string above the text, being held by a small girl.



27.     Although the essential elements have remained the same, over the years Creando has used variations of its original logo in association with its branding and advertising.  Two such variations include the following:

     

28.     Notwithstanding these variations, Creado has consistently utilized the same common and essential elements in its branding, consisting of the word "Creando" in large print together with the image of a round balloon rising on a string above the text.

29.     Creando's logo, and in particular the essential elements thereof, became strongly associated with Creando and the services it provides including the FSLA.  In particular, parents, children, members of Madison's near west-side neighborhoods, schools that refer students to Creando, and others all came to actively recognize and associate with Creando and its services the depiction of the word "Creando" in print with a sphere rising on a string above it.

30.     Beginning in 2014, Creando began regularly advertising its unique after-school programming on websites and blogs. As part of its advertising efforts, Creando paid current MSAC director Carey Zawlocki to post advertisements for Creando on her websites.  It also paid to have Defendant Verma write about Creando for online blogs published by Madison Mom's Blog, and separately paid to have Ms. Zawlocki write about Creando for online blogs published by Hulafrog.

31.     To further its online advertising campaign, Creando provided Ms. Zawlocki and Defendant Verma with access to attend Creando's educational programming means and methods, giving them the opportunity to observe the employment of the FSLA in action.  Creando also provided them with access to Creando's advertising materials and instructional pamphlets that discussed Creando.

Further, Creando allowed Defendant Verma and her children to attend its enrichment classes free of charge, allowing her to observe first-hand the effectiveness of the FSLA.

### IV.    Success of Creando's Operations and Branding Leads to Relocation

32.    Creando's unique programming was successful, and it developed a need for additional workspace because its after-school programs had gained in popularity and reputation. In particular, it hoped to strategically consolidate its classes into a single location in order to meet the needs of its growing student populations.  Therefore, in the fall of 2018, Creando approached Urban Land Interests, LLC ("ULI"), a Madison-based real estate developer, regarding building a new, larger space for its after-school program at 1716 Monroe Street.

33.    During the fall of 2018, ULI informed Creando that MSAC would also be moving to a new location built by ULI and adjacent to 1716 Monroe Street at 1722 Monroe Street. Although the location to which MSAC intended to move had a different street address, it is located within the same physical building as Creando's location. This issue was particularly concerning to Creando, and in these discussions it specifically inquired as to whether MSAC would be operating after-school programming that would compete with Creando's.

34.    ULI responded that MSAC would not; rather, ULI represented that MSAC had informed it that MSAC would only provide the same type of music and arts programming that it had previously provided, just in a bigger space.

35.    For the preceding 22 years, MSAC had never operated after-school programs other than traditional music and art instruction classes.

36.    Creando informed ULI that it would not be interested in renting ULI's space at 1716 Monroe Street if ULI also intended to rent adjacent or nearby space to direct competitors of Creando's after-school program.

37.    ULI made specific and express representations to Creando that MSAC would not offer programs competitive with the after-school classes and programs offered by Creando at MSAC's new 1722 Monroe Street location. On information and belief, ULI's statements were based upon information provided and representations made to it by MSAC.

38.    Creando expressly requested that any lease it might enter into with ULI contain a provision that would prohibit ULI from renting adjacent space to tenants that offered programs that compete with Creando's. ULI deflected. On February 8, 2019, Anne Morrison of ULI informed Creando that it "doesn't do exclusivity clauses" in leases for this building. Further, Ms. Morrison stated that Creando need not worry because ULI would be looking out for Creando's best interest, because it wanted Creando to succeed as they were also investing significant money into the buildout of Creando's new space.

39.    In reliance upon these representations and others, Creando entered into a 10-year lease with ULI in March of 2019 for the 1716 Monroe Street classroom spaces and thereafter paid one hundred seventeen thousand dollars ($117,000) to build out the space.

### V.   MSAC Intentionally Hides Its Intent to Compete with Creando For the Purpose of Obtaining Creando's Financial Support.

40.    In 2019, MSAC launched a capital campaign with the goal of raising eight hundred fifty thousand dollars ($850,000) to pay for the construction of its new spaces at 1722 Monroe Street. On information and belief, MSAC's Capital Campaign Committee charged with raising these funds included -- and continues to include -- Douglas Poland, one of the attorneys that represents it in this litigation.

41.    At or about the same time, MSAC confirmed ULI's representation that MSAC did not intend to operate any programs that would compete with Creando. On September 21, 2019, Creando member James Haygood met with then-MSAC president, Julia Kerr, as well as an additional MSAC board member, for more than 30 minutes. During this conversation, Ms. Kerr again stated MSAC's intent to continue its existing music and arts programming only, and that it would not initiate new programming that would compete with Creando's unique programming that employs the FSLA. Ms. Kerr and the other MSAC board member present talked at length with Mr. Haygood about Creando's coordination and cooperation with MSAC, and specifically about the opportunity for Creando to engage in joint fundraising activities to support MSAC.

42.    On the same date, Suzy Baldwin, MSAC's director of programming and marketing, also spoke with Mr. Haygood.  Ms. Baldwin similarly stated that MSAC intended to complement, rather than compete with, Creando and how excited MSAC was to be Creando's neighbor.  She also similarly expressed excitement at the possibility of  Creando publicly promoting MSAC and supporting its fundraising efforts through a joint event.

43.     On October 9, 2019, both of Creando's members met with MSAC's then-executive director, Monica Wahlberg, for more than an hour.   During this discussion, Ms. Wahlberg affirmed that MSAC intended to operate music and art programs that would complement Creando's more robust after-school program that employed the FSLA.   The opportunity for both entities' programs to work in coordination -- rather than competition -- with each other was discussed in great detail, and the Haygoods and Ms. Wahlberg discussed developing a coordinated plan to support each other's programming in the after-school hours once MSAC was settled in its new location.

44.     Not one time during the October 9, 2019, meeting did Ms. Wahlberg mention that MSAC intended  to enter into discussions with a third-party for-profit entity such as CSC with Defendants Verma and Gale to create a competing program for MSAC.

45.     On October 26, 2019, the Haygoods visited the new space being constructed for MSAC.   During that visit they met with Mses. Kerr and Wahlberg, who walked the Haygoods through the space and explained exactly how MSAC intended to use each room to support the putatively planned programming of the Center. During this visit, Mr. Haygood engaged in a discussion with Ms. Kerr for a period of 20-30 minutes in which they specifically discussed the manner in which the two programs would complement and avoid competing with each other in the after-school hours.

46.     On October 29, 2019, Mrs. Haygood attended a presentation by Ms. Kerr at the Monroe Street Merchants Association.   During this presentation Ms. Kerr

discussed at length and in great detail the putative programming that MSAC intended to implement. Not one time did Ms. Kerr talk about any programming outside of MSAC's then-current music and art programs, let alone disclose that MSAC intended to implement a program that would directly compete with Creando's after-school program.

47.     On November 11, 2019, Ms. Baldwin telephoned the Haygoods to discuss Creando's support for MSAC with a fundraising event to be held at Creando's facility. This event was held at MSAC's request, and in reliance upon the multiple representations that MSAC intended to support Creando's FSLA after-school programming and not compete with it.

48.      The fundraising event occurred on November 24, 2020. During the event, the Haygoods met with Ms. Wahlberg, as well as two other employees of MSAC. During this meeting the MSAC employees stated their intent to support the after-school programming conducted by Creando, and in return Creando owners stated their intent to promote the music and arts classes offered by MSAC.

49.     On March 9, 2020, Mr. Haygood had another conversation with Ms. Wahlberg in which she stated MSAC's intent to support Creando and its FSLA after-school programming. She further affirmed that MSAC would not be engaging in any competing after-school activities, but rather intended to continue its music and arts programming that it had historically offered.

50.     The March 9, 2020, conversation was the last time either of the Haygoods received any communication from MSAC concerning its intended programming.

VI.    **MSAC Announces Launch of CSC, a Program that Directly Competes with Creando, and Which MSAC Had Secretly Been Planning Since Before Its First Communication with Creando Concerning Its Capital Campaign.**

51.    After three months of silence, in July 2020, MSAC unveiled a new collaboration in an announcement entitled "Our First-Ever Afterschool Program."  The announcement stated that MSAC had entered into a partnership with Defendants Verma and Gale to create the Creative Soul Club, which specifically included after-school programming that directly competes with Creando's after-school FSLA programming.

52.    Following the announcement, Creando's owners contacted MSAC directly and spoke with Ms. Zawlocki (who had become MSAC's executive director following the departure of Ms. Wahlberg) and Suzy Baldwin. Both confirmed that MSAC had intended to launch an after-school educational program that competed with Creando well before MSAC's representatives ever entered into communication with the Haygoods.  Further, both stated that even though ULI made contrary representations to Creando, ULI's representative knew of MSAC's plans to launch CSC and had expressly approved the plan.

53.    In an effort to disarm Creando's concerns, Mses. Zawlocki and Baldwin insultingly *explained* that even though CSC's programming competed with Creando's, and attempted to copy the FSLA methodology, they did not believe that CSC could be considered a competitor because CSC program staff "weren't speaking Spanish."  In other words, Mses. Zawlocki and Baldwin argued that CSC was free to steal the fruit of

Creando's years of research and development as long as they did not similarly attempt to co-opt the bilinguality component of it.

54.      Notwithstanding the condescending, xenophobic, and racist character of MSAC's arguments made by Mses. Zawlocki and Baldwin, CSC seeks to and does compete with Creando's FSLA. It does this in at least three ways.  First, the defendants copied, and continue to copy, the logos and branding employed by Creando and that are widely recognized as associated with Creando and the FSLA. Second, the defendants copied elements of the FSLA that they could glean from observing the methodology in action and other public sources in an effort to convince Creando's students and potential students to switch to CSC's program.  Third, the defendants took advantage of MSAC's non-profit status to provide themselves with an unfair and unlawful economic advantage over Creando.

### A.     The Defendants Copy Creando's Branding, Including the Essential Elements of Its Logo

55.      When they launched CSC, the defendants unveiled a logo that is deceptively similar to the logos used by Creando, specifically incorporating the essential elements thereof in an effort to create market confusion.

56.      As noted above, the essential elements of the logo employed by Creando since 2014 are the use of the word "Creando" in large print, with a balloon rising on a string over the top of the text.

57.     The logo that CSC employs mimics each of these elements, except that it attempts to hide its effort to steal Creando's intellectual property by anglicizing the word Creando.  Specifically, CSC's logo consists of the words "CREATIVE SOUL CLUB" in large print, with a light bulb rising on a string over the text.



58.     Like Creando's logo and branding, CSC's logo consists of a large printed variant of the word "Create" with a spherical shape rising on a string above the text. The theft of these essential elements is unmistakable; moreover, the likelihood of confusion is amplified by the physical proximity of the parties -- CSC now operates from the very same building as Creando.

59.     The defendants also sought to capitalize on Creando's branding by launching a website that mimicked the format, style, and language of Creando's.



CREANDO                                MSAC and CSC

60. By stealing Creando's logo and branding, the defendants seek to take advantage of the goodwill and recognizability of Creando's logo, which is recognized in the community to be associated with the high quality and unique services provided by Creando and with the FSLA.

61. Further, CSC's use of the essential elements of the Creando logo to create another logo that consists of a variant of the word create with a spherical object rising on a string above the text it likely to create, and has created, a false impression with members of the public that CSC is associated with Creando. This provides an unfair competitive advantage to the defendants by reducing their advertising expenditures and, among other things, implying that the defendants are either associated with Creando or offer the same high quality programming as that provided under Creando's FSLA.

62. The defendants intentionally cultivated this perception that MSAC is associated with Creando by inducing Creando to publicly support its Capital Campaign and efforts to relocate to the 1722 Monroe Street facility.

63. By lying about their intentions, the defendants induced Creando to make public statements supporting MSAC and to engage in fundraising activities on MSAC's behalf.

64. If Creando had known that MSAC and its partners Mses. Verma and Gale had already planned to operate a competing program, Creando would not have publicly supported MSAC, donated funds to its Capital Campaign that Mr. Poland spearheaded, or assisted with MSAC's fundraising efforts. The defendants

intentionally withheld this information from Creando in order to obtain its assistance and public support.   In doing so, the defendants caused Creando to unwittingly contribute substantial assistance to the defendants' efforts to harm Creando.

### B.   The Defendants Attempt to Copy Creando's Unique Five Senses Learning Approach

65.   The defendants' unlawful conduct did not stop at copying Creando's logo. They also attempt to copy the robust and unique educational programming developed by Creando.

66.   Prior to 2020, MSAC's after-school programming consisted solely of music and art classes.

67.   Prior to the summer of 2020, CSC's partners had the opportunity to observe Creando's teachers and staff employ the FSLA and learn about elements of FSLA through discussions with Creando's members, the Haygoods.  Additionally, the defendants were able to read about Creando's programming through paper literature provided to them by Creando, as well as through Creando's website and on social media.

68.   Keenly aware of Creando's success, the defendants set about attempting to create an anglicized version of Creando's FSLA. Although they lacked the comprehensive understanding and secret methodology developed by Creando, they created a program that publicly represented itself to be identical to the FSLA in all aspects except bilinguality.

69.   In fact, CSC's website goes so far as to plagiarize the language found on Creando's website in an effort to convince the public that its program is a white-washed

version of Creando's FSLA.  Among other things, the CSC website uses similar (and in some places identical) language to the Creando website; claims to provide the same form of sense-learning education; seeks to enroll the same age group of children; seeks to enroll children from the same schools as Creando; provides the same hours of operation; copies Creando's pricing; offers the same extended care options as Creando; operates from the same building as Creando; and, offers the same bussing options as Creando.

70.     The defendants' public representations as to the similarity of the character and quality of the CSC programming to Creando's programming has caused and continues to cause consumer confusion.  Significantly, students that had enrolled in Creando's educational programming have withdrawn their enrollment in Creando and instead enrolled in CSC programming.

### C.     The Defendants Abuse the Nonprofit Tax Status of MSAC to Create an Unfair Financial Advantage for Themselves

71.     Although the defendants have copied Creando's pricing model, they possess an incredible and unfair financial advantage.

72.     MSAC is recognized as a non-profit entity by the US Department of Revenue. In that capacity, MSAC can and does accept tax free donations from the public that it uses to pay for the space it rents from ULI.

73.     On information and belief, CSC constitutes a partnership entered into between MSAC and Defendants Verma and Gale. It charges the families of students the same prices that Creando charges for its programming.  However, its operating costs

are substantially lower than Creando's because it does not pay rent for the space that it uses.

74.     On August 20, 2020, Creando engaged in a recorded conference call with MSAC, CSC, and ULI in an attempt to resolve Creando's concerns regarding CSC. During the call, Ms. Morrison from ULI affirmatively stated that CSC had not rented space from ULI, and confirmed that MSAC's lease with ULI was identical to Creando's lease and would not permit CSC to sublet space from MSAC without prior consent from ULI.  Moreover, she affirmed that under MSAC's lease, CSC could not affix its logo anywhere on the building, including within MSAC's rented space.

75.     During the call, Creando directly confronted the defendants concerning their use of MSAC's non-profit status to use community donations for the purpose of allowing CSC to operate with an unfair competitive advantage over Creando.  The defendants did not deny this activity, but instead sought clarification from Ms. Morrison as to whether MSAC's lease with ULI specifically prohibited it.  Ms. Morrison declined to provide a legal opinion as to this inquiry.

## CLAIM I
**Misappropriation**

76.     Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.

77.     Creando expended substantial time, labor, and money developing its branding and the FSLA.

78.     Creandos logos and branding, which are publicly recognized and associated with Creando and its FSLA methodology, are the product of more than seven years of effort, time, and funding to develop and promote.

79.     The FSLA is the product of more than 14 years of research and development, and the product of great sacrifice and effort by Creando and its members. It is a product that is objectively of great value in general, and subjectively of great value to Creando in particular.

80.     Notwithstanding the time, labor, and money expended by Creando, the Defendants have misappropriated all or some of Creando's branding and the FSLA to themselves.  Without having expended the same or similar effort, the defendants have misappropriated the final products of the fruits of Creando's labor for themselves.

81.     In making such misappropriations, the defendants have entered into competition with Creando, seeking to acquire students who have enrolled with Creando, or are likely to enroll in the future.

82.     Creando has suffered, and is likely to continue to suffer commercial damage in the future, as a result of the defendants' misappropriation in an amount to be determined at trial.

83.     Creando is likely to continue suffering damage in the absence of an order barring the defendants from continuing to use the misappropriated logo, branding, and elements of the FSLA.

<u>CLAIM II</u>
**Violation of the Deceptive Trade Practices Act - Wis. Stat. § 100.18 as against MSAC**

84.     Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.

85.     During its capital campaign, MSAC, and its Capital Campaign Committee upon which its attorney Douglas Poland sits, sought to raise $850,000 to, among other things, support MSAC's efforts to relocate to 1722 Monroe Street.

86.     On information and belief, MSAC represented to ULI that it would not engage in activity that competed with Creando. By making this representation, MSAC eliminated any resistance to its relocation to 1722 Monroe Street by another tenant of ULI in the same building.  It also obtained ULI's apparently unwitting assistance in convincing Creando to financially support MSAC.

87.     Through media release and public presentations by its agents, MSAC also represented to the public that it did not intend to engage in activity that competed with Creando.  It did so by intentionally withholding information that it planned to launch a directly competing after-school program, knowing that in reality it had planned to do so long before it moved into 1722 Monroe Street.

88.     MSAC repeatedly represented to Creando that it would not engage in competitive activities or programming with Creando, even though it had already formed an intent to do so.

89.     MSAC's public representations were made, published, and placed before one or more members of the public, including Creando and its members, in the form of

conversations, speeches, presentations, advertisements, blog posts, and social media posts.

90. MSAC's representations were false. Although MSAC represented to Creando, ULI, and the public at large that it did not intend to engage in activities that compete with Creando, MSAC did -- in fact -- intend to do so at the time it made such representations. MSAC had not only formed an intent to do so, but on information and belief had already entered into discussions and activities with Defendants Verma and Gale to form CSC.

91. As a result of MSAC's false representations, they induced Creando to donate money to MSAC; host fundraisers for MSAC; and promote MSAC's Capital Campaign on Creando's social media sites.

92. Further, if MSAC had disclosed its true activities and intentions, Creando would not have removed its objection to MSAC renting space in the same facility. This in turn would have forced ULI to decide whether it preferred to have MSAC as a tenant or Creando. Regardless of ULI's ultimate choice, Creando would not have entered into a lease to be a tenant in the same building as CSC and MSAC. However, because MSAC withheld this material information for the purpose of deceiving ULI and Creando, Creando executed a lease agreement with ULI and paid substantial funds to build out its location.

93. Further, MSAC's assurances induced Creando to provide the defendants with access to observe aspects of its unique educational programming, FSLA. MSAC

then used this access to further its effort to misappropriate aspects of the FSLA for its own purposes.

94.     Creando has been damaged by MSAC's false statements in an amount to be determined at trial.

## CLAIM III
### Violation of the Deceptive Trade Practices Act - Wis. Stat. § 100.18 as against All Defendants

95.     Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.

96.     The defendants maintain a website and engage in various advertising activities pursuant to which they promote CSC's after-school programming.  By and through their co-opting of Creando's likeness, logo, and branding, the defendants represent to the public that they are affiliated with Creando and/or offer educational programming that is the same or similar to that offered by Creando. The defendants' public representations are bolstered by the fact that they operate from the same building as Creando, and were able to convince (through their deceptions) Creando to promote and advertise on their behalf.  Further, the defendants claims are also bolstered by the fact that the CSC website uses similar (and in some places identical) language to the Creando website; claims to provide the same form of sense-learning education; seeks to enroll the same age group of children; seeks to enroll children from the same schools as Creando; provides the same hours of operation; copies Creando's pricing; offers the same extended care options as Creando; operates from the same building as Creando; and, offers the same bussing options as Creando.

97.     Notwithstanding these public statements, the defendants do not offer programming that is the same or similar to that of Creando's.  They cannot, of course, do so, because Creando's programming is the subject of more than 14 years of research and development that has been distilled into the FSLA, which consists of a methodology that Creando does not make, and has not made, publicly available.

98.     Notwithstanding that the defendants' public representations are false, members of the public have been and continue to be deceived by the defendants. Among other things, a number of students that had enrolled at Creando have withdrawn their enrollment in favor of enrolling at CSC.  As a result, the defendants' misrepresentations have damaged Creando in an amount to be determined at trial.

## CLAIM IV
### Negligent Misrepresentation

99.     Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.

100.    MSAC represented to Creando that, among other things, it would not enter into direct competition with Creando next door to Creando's new 1716 Monroe Street address.

101.    Creando reasonably relied on these statements and cooperated with MSAC in its capital campaign by giving money to MSAC, hosting fundraising events for MSAC in Creando's new workspaces, and sharing with MSAC's employees Creando's unique educational programming model and instructional and advertising materials.

102.    On information and belief, at the time MSAC represented to Creando that it would not enter into competition with it, MSAC had already been working to develop a partnership with CSC, Verma, and Gale to offer programming that would compete with Creando.

103.    MSAC's representations to Creando concerning its intent and actions to engage in direct competition were false.

104.    MSAC knew or should have known that the statements it made to Creando were false. MSAC failed to exercise ordinary care in making these representations to Creando.

105.    By reason of MSAC's misrepresentations, Creando has been harmed in an amount to be determined at trial.

<u>**CLAIM V**</u>
**Strict Liability Misrepresentation as against Defendant MSAC**

106.    Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.

107.    MSAC represented to Creando that, among other things, it would not enter into direct competition with Creando next door to Creando's new 1716 Monroe Street address.

108.    Creando reasonably relied on these statements and cooperated with MSAC in its capital campaign by giving money to MSAC, hosting fundraising events for MSAC in Creando's new workspaces, and sharing with MSAC's employees

Creando's unique educational programming model and instructional and advertising materials.

109.   MSAC's representations were false. On information and belief, at the time it represented to Creando that MSAC would not enter into competition with it, MSAC had already been working to develop a partnership with CSC, Verma, and Gale to offer programming that would compete with Creando.

110.   MSAC's representations and lies by omission were based upon its personal and, at the time, non-public knowledge.  It was therefore uniquely situated to ascertain the truth of the facts related to its representations.

111.   MSAC had an economic stake in Creando's belief and reliance upon its representations.  Among other things, in reliance upon MSAC's false statements Creando not only made monetary donations to MSAC, but also assisted MSAC with its capital campaign as well as larger fundraising efforts and also withdrew its objection to ULI renting to MSAC.

112.   By reason of MSAC's misrepresentations, Creando has been harmed in an amount to be determined at trial.

<u>CLAIM VI</u>
**Intentional Misrepresentation as against Defendant MSAC**

113.   Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.

114.   MSAC represented to Creando that, among other things, it would not enter into direct competition with Creando next door to Creando's new 1716 Monroe Street address.

115.    MSAC's representations were false. At the time MSAC represented to Creando that it would not enter into competition with Creando, MSAC had already been working to develop a directly competing after-school program and partnership with CSC, Verma, and Gale to offer programming that would compete with Creando.

116.    MSAC made its representations to Creando knowing them to be false, or made them recklessly without caring whether they were true or false.

117.    MSAC made its representations to Creando with the intent to defraud Creando and cause Creando to act upon them. Creando reasonably relied on these statements and cooperated with MSAC in its capital campaign by giving money to MSAC, hosting fundraising events for MSAC in Creando's new workspaces, and sharing with MSAC's employees Creando's unique educational programming model and instructional and advertising materials.

118.    By reason of MSAC's misrepresentations, Creando has been harmed in an amount to be determined at trial.

## CLAIM VII
### Promissory Estoppel as Against Defendant MSAC

119.    Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.

120.    MSAC promised Creando that it would not engage in activities and programming that are competitive to Creando's programming.

121.    MSAC reasonably should have expected that its promises would include action on the part of Creando.

122.    MSAC's promises induced Creando to, among other things, provide financial support to MSAC and assist MSAC with its capital campaign.

123.    Creando's reliance upon the promises of MSAC was reasonable.

124.    Creando's reliance upon the promises has now caused it substantial harm.

125.    The promises of MSAC must be enforced to avoid injustice.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays for judgment in its favor and against the defendants with respect to all the foregoing claims as follows:

A.      Awarding an order enjoining each defendant, its servants, agents and employees, and all other persons in active concert or participation with any defendant and its successors and assigns, from directly or indirectly:

1.      using, reproducing, creating, distributing, or publicly displaying any of Creando's logos or branding, including without limitation its service marks, logos, or trade dress, including the essential elements there of, in the advertising (including on the Internet), promotion, or rendering of its services;

2.      expressly or impliedly representing itself to customers, potential customers, or the public to be affiliated in any way with Creando; or that they in any way developed or have authority to use the FSLA.

3.      representing by words or conduct that any service provided, offered for sale, sold, advertised, or rendered by the defendants is

authorized, sponsored, or endorsed by or otherwise connected with Creando;

        4.      competing unfairly with Creando in any manner by improperly using any Creando service mark, logo, or trade dress, or any colorable imitation of any of them, and/or any mark that is likely to cause consumer confusion as to the source of the respective defendants' services;

        B.      Awarding the plaintiff its actual and consequential damages jointly and severally from the defendants in an amount to be determined at trial;

        C.      Awarding the plaintiff its statutory double damages jointly and severally from the defendants pursuant to Wis. Stat. § 100.18;

        D.      Awarding the plaintiff punitive damages from Defendant MSAC in an amount to be determined at trial pursuant to its claim for intentional misrepresentation;

        E.      An order awarding the plaintiff its costs and fees, including its actual attorneys' fees as permitted pursuant to Wis. Stat. 100.18, jointly and severally from the defendants;

        F.      An order awarding the plaintiff such other relief as the court may find just and appropriate.

Respectfully submitted this 21st day of December, 2020

WEST & DUNN

/s/ Travis James West

Travis James West SBN 1052340
Benoit M. Letendre SBN 1079792
114 East Main Street, Suite 211
P.O. Box 37
Waunakee, Wisconsin 53597
Ph. (608) 535-6420
Email: twest@westdunn.com
           bletendre@westdunn.com

Attorneys for Plaintiff Creando Little
Language Explorers, LLC