IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CREANDO LITTLE LANGUAGE EXPLORERS LLC,

      Plaintiff,

v.                                        20-cv-1051-wmc

MONROE STREET ARTS CENTER, INC.,
TARA VERMA, JAMIE GALE, and
CREATIVE SOUL CLUB,

      Defendants.

## ANSWER AND AFFIRMATIVE DEFENSES OF TARA VERMA, JAMIE GALE, AND CREATIVE SOUL CLUB TO AMENDED COMPLAINT

Defendants, Tara Verma, Jamie Gale, and Creative Soul Club (collectively "the CSC Defendants"), by their attorneys Stafford Rosenbaum LLP, as and for their Answer to plaintiffs' First Amended Complaint, answer plaintiffs' Amended Complaint as follows:

### INTRODUCTORY STATEMENT AS TO FEDERAL JURISDICTION

1. **This First Amended Complaint contains no causes of action arising under federal law, and thus deprives the Western District of Wisconsin of subject matter jurisdiction.**

**ANSWER:** CSC Defendants deny. To answer further, upon information and belief, CSC defendants believe Plaintiff's Claims I and III are pre-empted by the Copyright Act of 1976, and therefore the Western District of Wisconsin retains subject

1

matter jurisdiction.  Furthermore, the Court retains subject matter jurisdiction pursuant to

28 U.S.C. § 1367, as the Court held in its March 29, 2021 Opinion and Order. (Dkt. #20.)

2.      **The plaintiff filed its initial complaint in Dane County Circuit Court on October 16, 2020, stating seven state-based claims and a single federal claim for violation of the Lanham Act. The defendants thereafter removed this action to federal court on November 19, 2020, on the basis of this sole federal claim.**

**ANSWER:**  CSC Defendants admit that the plaintiff alleged seven state-based

claims and a single federal claim for violation of the Lanham Act in its initial complaint

filed in Dane County Circuit Court on October 16, 2020 but deny that plaintiff "stated" a

claim, as that term is used in Wis. Stat. § 802.06(a)(2)(6). CSC defendants admit that they

removed this action to federal court on November 19, 2020, pursuant to this Court's

original jurisdiction over the Lanham Act claim, and its supplemental jurisdiction over

the state-law claims pursuant to 28 U.S.C. § 1367.

3.      **Following removal, the defendants filed a 48-page motion to dismiss, over half of which focused on the plaintiff's Lanham Act claim. The defendants devoted a substantial portion of their brief to convincing the court to weigh the facts in their favor rather than construe them as true for the purposes of adjudicating the motion to dismiss. However, the plaintiff acknowledges that defendants' argument that the court should narrowly construe the Lanham Act to conclude that the plaintiff did not, and could not, have used its service mark in interstate commerce. Although this argument accurately captured the predominant argument prior to 2016, the Federal Circuit's decision in *Christian Faith Fellowship Church v. Adidas AG*, 841 F.3d 986 (Fed. Cir. 2016) dramatically expanded the scope of the Lanham Act to cover activities and marks that had previously not been considered to be governed by the Act.**

**ANSWER:**  Paragraph 3 of the Amended Complaint contains allegations of fact,

opinions, and legal argument to which no answer is required. CSC defendants admit the

sole factual allegation in Paragraph 3, which is that they filed a Motion to Dismiss

2

Plaintiff's Complaint in which they argued that the plaintiff failed to state a claim under the Lanham Act because plaintiff did not use its service mark in interstate commerce. To the extent an answer to the remaining allegations in Paragraph 3 is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of such allegations and therefore deny.

4.     **Although the Federal Circuit's decision opens the door for the plaintiff's claim, the Seventh Circuit has not yet weighed in on this shift in the legal landscape. While Creando is confident it would ultimately prevail, it does not have the advantage of being represented by the law firm that employs the former president of its board of directors.[1] It is therefore at a substantial economic disadvantage. Accordingly, Creando has made the strategic decision to abandon the Lanham Act claim in favor of the seven remaining state law claims.**

**ANSWER:**  Paragraph 4 of the Amended Complaint, including footnote 1, contains allegations of fact, opinions, and legal argument to which no answer is required. CSC Defendants deny the factual allegations in Paragraph 4. To the extent an answer to the remaining allegations of Paragraph 4 is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of such allegations, and therefore deny.

5.     **As a result of Creando's decision not to replead its sole federal claim, the Western District of Wisconsin no longer has subject matter jurisdiction over**

---

[1]     In addition to his former role as the president of MSAC's board of directors, lead counsel for the defendants publicly holds himself out to be a member of MSAC's Capital Campaign from 2019 to the present. Given Mr. Poland's role, the plaintiff believes he is disqualified from representing the defendants as he is virtually certain to be deposed as a witness in this matter.

**this dispute, and it must be remanded for resolution by the Dane County Circuit Court.**

**ANSWER:** CSC Defendants deny. To answer further, upon information and belief, CSC defendants believe Plaintiff's Claims I and III are pre-empted by the Copyright Act of 1976, and therefore the Western District of Wisconsin retains subject matter jurisdiction. Furthermore, the Court retains subject matter jurisdiction pursuant to 28 U.S.C. § 1367, as the Court held in its March 29, 2021 Opinion and Order. (Dkt. #20.)

## PARTIES

6.     **Creando is a Wisconsin limited liability company with a principal business address of 1716 Monroe Street, Madison, WI 53711.**

**ANSWER:** CSC Defendants admit Creando has a business address of 1716 Monroe Street, Madison, WI 53711. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 6, and therefore deny.

7.     **Defendant Monroe Street Arts Center, Inc. ("MSAC"), is a Wisconsin corporation operating as a nonprofit entity under IRC section 501(c), with a principal business address of 1722 Monroe Street, Madison, WI 53711.**

**ANSWER:** CSC Defendants admit that MSAC is a Wisconsin Corporation. CSC Defendants deny that MSAC's principal business address is 1722 Monroe Street, Madison, WI 53711. Answering further, CSC Defendants state that MSAC's principal business address is 1732 West Lawn Avenue, Madison, Wisconsin, 53711. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 7, and therefore deny.

4

8.   **Defendant Tara Verma is an adult resident of the State of Wisconsin who resides at 721 Cone Flower Street, Middleton, Wisconsin 53562**.

**ANSWER:**  CSC Defendants admit.

9.   **Defendant Jamie Gale is an adult resident of the State of Wisconsin who resides at 5413 Jonquil Court, Middleton, Wisconsin 53562.**

**ANSWER:**  CSC Defendants admit.

10.   **Defendant Creative Soul Club ("CSC") is a partnership between Defendants Verma and Gale, with a principal business address of 1722 Monroe Street, Madison, WI 53711.**

**ANSWER:**  CSC Defendants deny. Answering further, CSC Defendants state that Creative Soul Club ("CSC") is not a legal partnership but rather a trade name under which Defendants Verma and Gale do business, and that Defendants Verma and Gale have used the "Creative Soul" trade name since 2017.  CSC Defendants further state that CSC is not an entity that can be sued, and any claims against it must be dismissed.  CSC Defendants further state that CSC conducts the after-school program in collaboration with MSAC at MSAC's leased space located at 1732 West Lawn Avenue, Madison, Wisconsin, 53711.

## JURISDICTION AND VENUE

11.   **The causes of actions set forth in this complaint state legal, statutory, or equitable claims arising under the laws of the State of Wisconsin. As no federal claim is stated, the US District Court for the Western District of Wisconsin lacks subject matter jurisdiction over this matter.**

**ANSWER:**  CSC Defendants deny. To answer further, upon information and belief, CSC defendants believe Plaintiff's Claims I and III are pre-empted by the Copyright Act of 1976, and therefore the Western District of Wisconsin retains subject

5

matter jurisdiction.  Furthermore, the Court retains subject matter jurisdiction pursuant to 28 U.S.C. § 1367, as the Court held in its March 29, 2021 Opinion and Order. (Dkt. #20.)

12.  **As the causes of action set forth in the complaint state legal, statutory, or equitable claims arising under the laws of the State of Wisconsin, the circuit courts of the State of Wisconsin have subject matter jurisdiction over this matter.**

**ANSWER:**  CSC Defendants deny. To answer further, upon information and belief, CSC defendants believe Plaintiff's Claims I and III are pre-empted by the Copyright Act of 1976, and therefore the Western District of Wisconsin retains subject matter jurisdiction.  Furthermore, the Court retains subject matter jurisdiction pursuant to 28 U.S.C. § 1367, as the Court held in its March 29, 2021 Opinion and Order. (Dkt. #20.)

13.  **The courts of the State of Wisconsin have personal jurisdiction over the Defendants because Defendants either reside in the State of Wisconsin or have their principal place of business in the State of Wisconsin**.

**ANSWER:**  CSC Defendants admit they reside and maintain their principal place of business in the State of Wisconsin.  The remaining allegations in Paragraph 13 are legal conclusions to which no answer is required.

14.  **Venue in Dane County is proper because the acts giving rise to Plaintiff's Complaint occurred in Dane County.**

**ANSWER:**  CSC Defendants admit the acts giving rise to Plaintiff's Amended Complaint occurred in Dane County.  The remaining allegations in Paragraph 14 are legal conclusions to which no answer is required.

## FACTS COMMON TO ALL CLAIMS

I.  **Creation of Creando Little Language Explores**

15. **Creando was organized in October of 2013, when Karen Haygood and James Haygood, now members of Creando, filed articles of organization for the company with the Wisconsin Department of Financial Institutions.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15, and therefore deny.

16. **In 2014, Creando started a home-based and after-school language and childhood development program in several locations in Madison and one permanent rented space on Atwood Avenue. Beginning in 2015, Creando rented space on Lakeside Street in Madison, after which it relocated to a building on Monroe Street that was on the adjacent block down the street from and in line-of-site of MSAC's facilities at 2526 Monroe Street.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16, and therefore deny.

17. **While at the Monroe Street address Creando daily observed the after-school programs operated by MSAC, which consisted of traditional music and art instruction classes.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17, and therefore deny.

II.    **Development of Creando's Unique Five Senses Approach to Learning**

18. **Creando member Karen Haygood began working in the field of education in 2007. She initially worked with children under the age   of five in Lima, Perú, and then transitioned to working with children of all ages in the United States. Her experience includes work in and with both public and private preschools and elementary schools. In the United States she has worked with schools and children in the Janesville, Waunakee, Middleton and Madison School Districts. She has published children's educational books on a national level since at least 2013.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18, and therefore deny.

19.     **At times in her career, Mrs. Haygood has taught both English as a second language to native Spanish speaking children, and also Spanish as a second language to native English speaking children. In that capacity, she observed that for children to really learn and understand vocabulary, they needed to live with and experience the words they were being taught through their five senses to develop a true and deep understanding of the language. Children struggle to understand how language and vocabulary practically work without real world experience through meaningful and memorable activities.**

**ANSWER:**  CSC Defendants admit the last sentence of the allegations in Paragraph 19. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 19, and therefore deny.

20.     **Over years of study and observation, Mrs. Haygood first learned, and then proved, that children benefit from this approach to learning in more areas than just language study. Rather, the application of this principle can -- and Creando believes should -- be applied more broadly to learning in all facets of children's learning.**

**ANSWER:**  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20, and therefore deny.

21.     **The Haygoods founded Creando in 2013, and immediately began refining the principles learned through Mrs. Haygood's research and observations into a teaching methodology that they eventually called the Five Senses Learning Approach ("FSLA"). The methodology is more than just haphazardly encouraging students to "use their five senses." Rather, it consists of a systematic and researched approach that has been developed and refined over approximately 14 years. The FSLA utilizes a unique and proprietary teaching methodology that involves the use of language, STEM, physical activity, and the arts in a particular manner that was developed by Creando. Moreover, beginning in 2014, Creando began to refine the FSLA to meet the specific needs of the children most likely to use its programming in Madison, Wisconsin.**

**ANSWER:**  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21, and therefore deny.

22.     **Although Creando's programming is often referred to as just a "Spanish class" by the defendants, it is in fact substantially more. The FSLA**

8

**incorporates a curriculum of explorations that creates the real-world memorable experiences that permit children to "live" the things they learn -- including, but not limited to the Spanish language. Through these experiences, teachings become a part of the students' lives rather than just memorized facts. Although bilinguality is a component of the FSLA, the methodology creates a unique opportunity for children to also learn about math, science, reading, music, art, movement, culture, and more.**

**ANSWER:** CSC Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 22, and therefore deny.

23. **Creando has developed a program to ensure that its teachers, assistant teachers, and staff adhere to the requirements of the FSLA. However, the full methodology, research, and analysis underpinning the FSLA is not, and has not been, disclosed to anyone other than the Haygoods and managers of the after-school program. It remains a trade secret known only to Creando's members.**

**ANSWER:** CSC Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 23, and therefore deny.

24. **The FSLA is unlike MSAC's traditional music and art instruction classes. Creando's after-school programs center on a unique, interactive approach to learning that its owners developed over years of trial and error. Creando developed the learning technique, known as the five senses learning approach, through the development of relationships with school administrators as well as extensive research concerning operations, locations, and transportation services required to meet the needs of families involved in its programs.**

**ANSWER:** CSC Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 24, and therefore deny.

## III. Development of Creando Logo and Brand

25. **Since its creation, Creando has made active and continuous use of its logo and essential elements thereof in its branding and advertising. Creando's original logo is registered with the United States Patent and Trademark Office ("USPTO") under registration number 4563155 (the "Original Logo").**

**ANSWER:** CSC Defendants admit that Creando has registered a logo with the

9

USPTO under registration number 4563155. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 25, and therefore deny.

26. **This Original Logo consisted of the word Creando, meaning "creating" in Spanish, in large print, with the words Little Language Explorers beneath it. To the right of this text, the logo includes a round balloon rising on a string above the text, being held by a small girl.**



**ANSWER:**   CSC Defendants admit in part. To answer further, they admit a logo resembling the description set forth in Paragraph 26 was registered to Creando with the USPTO. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 26, and therefore deny.

27. **Although the essential elements have remained the same, over the years Creando has used variations of its original logo in association with its branding and advertising. Two such variations include the following:**

 

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 27, and therefore deny.

28.    **Notwithstanding these variations, Creando has consistently utilized the same common and essential elements in its branding, consisting of the word "Creando" in large print together with the image of a round balloon rising on a string above the text.**

**ANSWER:**  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28, and therefore deny.

29.    **Creando's logo, and in particular the essential elements thereof, became strongly associated with Creando and the services it provides including the FSLA. In particular, parents, children, members of Madison's near west-side neighborhoods, schools that refer students to Creando, and others all came to actively recognize and associate with Creando and its services the depiction of the word "Creando" in print with a sphere rising on a string above it.**

**ANSWER:**  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29, and therefore deny.

30.    **Beginning in 2014, Creando began regularly advertising its unique after-school programming on websites and blogs. As part of its advertising efforts, Creando paid current MSAC director Carey Zawlocki to post advertisements for Creando on her websites.   It also paid to have Defendant Verma write about Creando for online blogs published by Madison Mom's Blog, and separately paid to have Ms. Zawlocki write about Creando for online blogs published by Hulafrog.**

**ANSWER:**  CSC Defendants admit that in 2014, Defendant Verma wrote a single blog post about Creando on behalf of Madison Mom's Blog. Answering further, CSC Defendants state that Defendant Verma was not monetarily compensated for writing the single blog post, but that in exchange for writing the single blog post, she was permitted to attend one toddler and preschooler Spanish class at a Creando facility located at 412 Baldwin Street, Madison, Wisconsin, with her two children, who were then ages 2 and 5 years old. Answering further, CSC Defendants state that the class

instructor spoke in Spanish during the entire class, and that the children in attendance read books and painted a picture.  At no point did the instructor speak to Defendant Verma or provide her with any information. Defendant Verma attended the single class on May 6, 2014, and wrote the blog post a day or two later.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30 regarding Ms. Zawlocki, and therefore deny.  CSC Defendants deny the remaining allegations in Paragraph 30.

31.     **To further its online advertising campaign, Creando provided Ms. Zawlocki and Defendant Verma with access to attend Creando's educational programming means and methods, giving them the opportunity to observe the employment of the FSLA in action. Creando also provided them with access to Creando's advertising materials and instructional pamphlets that discussed Creando.  Further, Creando allowed Defendant Verma and her children to attend its enrichment classes free of charge, allowing her to observe first-hand the effectiveness of the FSLA.**

**ANSWER:**  CSC Defendants admit that in 2014, Defendant Verma wrote a single blog post about Creando on behalf of Madison Mom's Blog. Answering further, CSC Defendants state that Defendant Verma was not monetarily compensated for writing the single blog post, but that in exchange for writing the single blog post, she was permitted to attend one toddler and preschooler Spanish class at a Creando facility located at 412 Baldwin Street, Madison, Wisconsin, with her two children, who were then ages 2 and 5 years old. Answering further, CSC Defendants state that the class instructor spoke in Spanish during the entire class, and that the children in attendance read books and painted a picture.  At no point did the instructor speak to Defendant Verma or provide her with any information. Defendant Verma attended the single class

on May 6, 2014, and wrote the blog post a day or two later.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30 regarding Ms. Zawlocki, and therefore deny.  CSC Defendants deny the remaining allegations in Paragraph 31.

**IV.    Success of Creando's Operations and Branding Leads to Relocation**

32.    **Creando's unique programming was successful, and it developed a need for additional workspace because its after-school programs had gained in popularity and reputation. In particular, it hoped to strategically consolidate its classes into a single location in order to meet the needs of its growing student populations. Therefore, in the fall of 2018, Creando approached Urban Land Interests, LLC ("ULI"), a Madison-based real estate developer, regarding building a new, larger space for its after-school program at 1716 Monroe Street.**

**ANSWER:**  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32, and therefore deny.

33.    **During the fall of 2018, ULI informed Creando that MSAC would also be moving to a new location built by ULI and adjacent to 1716 Monroe Street at 1722 Monroe Street. Although the location to which MSAC intended to move had a different street address, it is located within the same physical building as Creando's location. This issue was particularly concerning to Creando, and in these discussions it specifically inquired as to whether MSAC would be operating after-school programming that would compete with Creando's.**

**ANSWER:**  CSC Defendants admit that MSAC's principal place of business is located within the same physical building as Creando, and, answering further, state that MSAC's principal place of business is located at 1732 West Lawn Avenue, Madison, Wisconsin, 53711.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 33, and therefore deny.

34.    **ULI responded that MSAC would not; rather, ULI represented that MSAC had informed it that MSAC would only provide the same type of music and arts programming that it had previously provided, just in a bigger space.**

13

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34, and therefore deny.

35.   **For the preceding 22 years, MSAC had never operated after-school programs other than traditional music and art instruction classes.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35, and therefore deny.

36.   **Creando informed ULI that it would not be interested in renting ULI's space at 1716 Monroe Street if ULI also intended to rent adjacent or nearby space to direct competitors of Creando's after-school program.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36, and therefore deny.

37.   **ULI made specific and express representations to Creando that MSAC would not offer programs competitive with the after-school classes and programs offered by Creando at MSAC's new 1722 Monroe Street location. On information and belief, ULI's statements were based upon information provided and representations made to it by MSAC.**

**ANSWER:**   CSC Defendants deny the allegations in Paragraph 37 to the extent Paragraph 37 alleges the after-school program CSC conducts in collaboration with MSAC is located at 1722 Monroe Street. Answering further, CSC Defendants state that the after-school program CSC conducts in collaboration with MSAC is conducted at MSAC's leased space located at 1732 West Lawn Avenue, Madison, Wisconsin, 53711. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 37, and therefore deny.

38.   **Creando expressly requested that any lease it might enter into with ULI contain a provision that would prohibit ULI from renting adjacent space to tenants that offered programs that compete with Creando's. ULI deflected. On February 8, 2019, Anne Morrison of ULI informed Creando that it "doesn't do**

**exclusivity clauses" in leases for this building. Further, Ms. Morrison stated that Creando need not worry because ULI would be looking out for Creando's best interest, because it wanted Creando to succeed as they were also investing significant money into the buildout of Creando's new space.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38, and therefore deny.

39.   **In reliance upon these representations and others, Creando entered into a 10-year lease with ULI in March of 2019 for the 1716 Monroe Street classroom spaces and thereafter paid one hundred seventeen thousand dollars ($117,000) to build out the space.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39, and therefore deny.

**V.   MSAC Intentionally Hides Its Intent to Compete with Creando For the Purpose of Obtaining Creando's Financial Support.**

40.   **In 2019, MSAC launched a capital campaign with the goal of raising eight hundred fifty thousand dollars ($850,000) to pay for the construction of its new spaces at 1722 Monroe Street. On information and belief, MSAC's Capital Campaign Committee charged with raising these funds included -- and continues to include -- Douglas Poland, one of the attorneys that represents it in this litigation.**

**ANSWER:**   CSC Defendants deny that MSAC's principal business address is 1722 Monroe Street, Madison, WI 53711. Answering further, CSC Defendants state that MSAC's principal business address is 1732 West Lawn Avenue, Madison, Wisconsin, 53711.   CSC Defendants deny that Douglas Poland currently represents MSAC in this litigation, and further state that attorneys Lynne M. Mueller and Mark W. Rattan of Litchfield Cavo LLP represent MSAC in this litigation.   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 40, and therefore deny

15

41.     **At or about the same time, MSAC confirmed ULI's representation that MSAC did not intend to operate any programs that would compete with Creando. On September 21, 2019, Creando member James Haygood met with then-MSAC president, Julia Kerr, as well as an additional MSAC board member, for more than 30 minutes. During this conversation, Ms. Kerr again stated MSAC's intent to continue its existing music and arts programming only, and that it would not initiate new programming that would compete with Creando's unique programming that employs the FSLA. Ms. Kerr and the other MSAC board member present talked at length with Mr. Haygood about Creando's coordination and cooperation with MSAC, and specifically about the opportunity for Creando to engage in joint fundraising activities to support MSAC.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41, and therefore deny.

42.     **On the same date, Suzy Baldwin, MSAC's director of programming and marketing, also spoke with Mr. Haygood. Ms. Baldwin similarly stated that MSAC intended to complement, rather than compete with, Creando and how excited MSAC was to be Creando's neighbor. She also similarly expressed excitement at the possibility of Creando publicly promoting MSAC and supporting its fundraising efforts through a joint event.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42, and therefore deny.

43.     **On October 9, 2019, both of Creando's members met with MSAC's then-executive director, Monica Wahlberg, for more than an hour. During this discussion, Ms. Wahlberg affirmed that MSAC intended to operate music and art programs that would complement Creando's more robust after-school program that employed the FSLA. The opportunity for both entities' programs to work in coordination -- rather than competition -- with each other was discussed in great detail, and the Haygoods and Ms. Wahlberg discussed developing a coordinated plan to support each other's programming in the after-school hours once MSAC was settled in its new location.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43, and therefore deny.

44.     **Not one time during the October 9, 2019, meeting did Ms. Wahlberg mention that MSAC intended to enter into discussions with a third-party for-profit**

16

**entity such as CSC with Defendants Verma and Gale to create a competing program for MSAC.**

**ANSWER:**  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44 with respect to statements by Ms. Wahlberg, and therefore deny.  Answering further, CSC Defendants state that Defendant Gale first spoke with a representative of MSAC about the possibility of little om BIG OM providing yoga classes at MSAC in February 2020, and that Defendant Gale first spoke with a representative of MSAC about the possibility of little om BIG OM participating in an after-school program at MSAC in March 2020. CSC Defendants further state that they first proposed a collaborative after-school program to MSAC that included Defendant Verma and the "Creative Soul" trade name in June 2020.  Answering further, CSC Defendants state that Defendants Verma and Gale have used the "Creative Soul" trade name since 2017.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 44, and therefore deny.

45.     **On October 26, 2019, the Haygoods visited the new space being constructed for MSAC. During that visit they met with Mses. Kerr and Wahlberg, who walked the Haygoods through the space and explained exactly how MSAC intended to use each room to support the putatively planned programming of the Center. During this visit, Mr. Haygood engaged in a discussion with Ms. Kerr for a period of 20-30 minutes in which they specifically discussed the manner in which the two programs would complement and avoid competing with each other in the after-school hours.**

**ANSWER:**  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 45, and therefore deny.

46.     **On October 29, 2019, Mrs. Haygood attended a presentation by Ms. Kerr at the Monroe Street Merchants Association. During this presentation Ms.**

17

**Kerr discussed at length and in great detail the putative programming that MSAC intended to implement. Not one time did Ms. Kerr talk about any programming outside of MSAC's then-current music and art programs, let alone disclose that MSAC intended to implement a program that would directly compete with Creando's after-school program.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46, and therefore deny.

47.   **On November 11, 2019, Ms. Baldwin telephoned the Haygoods to discuss Creando's support for MSAC with a fundraising event to be held at Creando's facility. This event was held at MSAC's request, and in reliance upon the multiple representations that MSAC intended to support Creando's FSLA after-school programming and not compete with it.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47, and therefore deny.

48.   **The fundraising event occurred on November 24, 2020. During the event, the Haygoods met with Ms. Wahlberg, as well as two other employees of MSAC. During this meeting the MSAC employees stated their intent to support the after-school programming conducted by Creando, and in return Creando owners stated their intent to promote the music and arts classes offered by MSAC.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48, and therefore deny.

49.   **On March 9, 2020, Mr. Haygood had another conversation with Ms. Wahlberg in which she stated MSAC's intent to support Creando and its FSLA after-school programming. She further affirmed that MSAC would not be engaging in any competing after-school activities, but rather intended to continue its music and arts programming that it had historically offered.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49, and therefore deny.

50.   **The March 9, 2020, conversation was the last time either of the Haygoods received any communication from MSAC concerning its intended programming.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50, and therefore deny.

## VI.   MSAC Announces Launch of CSC, a Program that Directly Competes with Creando, and Which MSAC Had Secretly Been Planning Since Before Its First Communication with Creando Concerning Its Capital Campaign.

51.   **After three months of silence, in July 2020, MSAC unveiled a new collaboration in an announcement entitled "Our First-Ever Afterschool Program." The announcement stated that MSAC had entered into a partnership with Defendants Verma and Gale to create the Creative Soul Club, which specifically included after-school programming that directly competes with Creando's after-school FSLA programming.**

**ANSWER:**   CSC Defendants admit that on July 23, 2020, MSAC announced the launch of Creative Soul Club beginning in September 2020. CSC Defendants deny that the July 23 announcement was entitled "Our First-Ever Afterschool Program." Answering further, CSC Defendants state that the announcement stated: "We have REALLY BIG news! Introducing Creative Soul Club at MSAC! Creative Soul Club is a place for your kids to learn and explore their creativity through Art, Music, Culinary, and Yoga in the after school hours during the school year! Throughout each week, Club groups will experience all four specialties, with 1-2 classes per day. Kids will also have free play, homework supervision and snack time each day at Club, which takes place in Monroe Street Arts Center's beautiful new space! Yoga will be led by little om BIG OM, Culinary by Yummy Sprout and Art & Music by Monroe Street Arts Center. We are so proud of this partnership and are incredibly excited to CREATE with school-age kids all year long! We are planning to launch in-person Creative Soul Club beginning September 2020 and we will work hard to adapt to the ever-changing COVID situation in Dane

19

County to maximize our offerings for area kids in a safe and thoughtful way! More details and registration to follow in the coming weeks as we adapt our plan for the announcement that area schools will be online – add your name to our email list to be the first to know the details of the program and have advanced notice of registration opening! Learn More!"  CSC Defendants deny the remaining allegations in Paragraph 51.

52.   **Following the announcement, Creando's owners contacted MSAC directly and spoke with Ms. Zawlocki (who had become MSAC's executive director following the departure of Ms. Wahlberg) and Suzy Baldwin. Both confirmed that MSAC had intended to launch an after-school educational program that competed with Creando well before MSAC's representatives ever entered into communication with the Haygoods. Further, both stated that even though ULI made contrary representations to Creando, ULI's representative knew of MSAC's plans to launch CSC and had expressly approved the plan.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52, and therefore deny.

53.   **In an effort to disarm Creando's concerns, Mses. Zawlocki and Baldwin insultingly explained that even though CSC's programming competed with Creando's, and attempted to copy the FSLA methodology, they did not believe that CSC could be considered a competitor because CSC program staff "weren't speaking Spanish." In other words, Mses. Zawlocki and Baldwin argued that CSC was free to steal the fruit of Creando's years of research and development as long as they did not similarly attempt to co-opt the bilinguality component of it.**

**ANSWER:**   CSC Defendants deny that their programming competes with Creando's, deny that they attempted to copy the alleged "FSLA methodology," and deny that they stole anything from Creando.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 53, and therefore deny.

54.     **Notwithstanding the condescending, xenophobic, and racist character of MSAC's arguments made by Mses. Zawlocki and Baldwin, CSC seeks to and does compete with Creando's FSLA. It does this in at least three ways. First, the defendants copied, and continue to copy, the logos and branding employed by Creando and that are widely recognized as associated with Creando and the FSLA. Second, the defendants copied elements of the FSLA that they could glean from observing the methodology in action and other public sources in an effort to convince Creando's students and potential students to switch to CSC's program. Third, the defendants took advantage of MSAC's non-profit status to provide themselves with an unfair and unlawful economic advantage over Creando.**

      **ANSWER:**   CSC Defendants deny.

      **A.     The Defendants Copy Creando's Branding, Including the Essential Elements of Its Logo**

55.     **When they launched CSC, the defendants unveiled a logo that is deceptively similar to the logos used by Creando, specifically incorporating the essential elements thereof in an effort to create market confusion.**

      **ANSWER:**   CSC Defendants deny.

56.     **As noted above, the essential elements of the logo employed by Creando since 2014 are the use of the word "Creando" in large print, with a balloon rising on a string over the top of the text.**

      **ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 56, and therefore deny.

57.     **The logo that CSC employs mimics each of these elements, except that it attempts to hide its effort to steal Creando's intellectual property by anglicizing the word Creando. Specifically, CSC's logo consists of the words "CREATIVE SOUL CLUB" in large print, with a light bulb rising on a string over the text.**

      **ANSWER:**   CSC Defendants deny.

58.     **Like Creando's logo and branding, CSC's logo consists of a large printed variant of the word "Create" with a spherical shape rising on a string above the text. The theft of these essential elements is unmistakable; moreover, the likelihood of confusion is amplified by the physical proximity of the parties -- CSC now operates from the very same building as Creando.**



21

**ANSWER:** CSC Defendants admit that in collaboration with MSAC, CSC conducts an after-school program in the same building as Creando. Answering further, CSC Defendants state that CSC conducts the after-school program in collaboration with MSAC at MSAC's leased space located at 1732 West Lawn Avenue, Madison, Wisconsin, 53711. CSC Defendants deny the remaining allegations in Paragraph 58.

59. **The defendants also sought to capitalize on Creando's branding by launching a website that mimicked the format, style, and language of Creando's.**



CREANDO                    MSAC and CSC

**ANSWER:** CSC Defendants deny.

60. **By stealing Creando's logo and branding, the defendants seek to take advantage of the goodwill and recognizability of Creando's logo, which is recognized in the community to be associated with the high quality and unique services provided by Creando and with the FSLA.**

**ANSWER:** CSC Defendants deny.

61. **Further, CSC's use of the essential elements of the Creando logo to create another logo that consists of a variant of the word create with a spherical object rising on a string above the text it likely to create, and has created, a false impression with members of the public that CSC is associated with Creando. This provides an unfair competitive advantage to the defendants by reducing their**

**advertising expenditures and, among other things, implying that the defendants are either associated with Creando or offer the same high quality programming as that provided under Creando's FSLA.**

**ANSWER:**   CSC Defendants deny.

62.   **The defendants intentionally cultivated this perception that MSAC is associated with Creando by inducing Creando to publicly support its Capital Campaign and efforts to relocate to the 1722 Monroe Street facility.**

**ANSWER:**   CSC Defendants deny.  Answering further, CSC Defendants state

that MSAC's principal business address is 1732 West Lawn Avenue, Madison,

Wisconsin, 53711.

63.   **By lying about their intentions, the defendants induced Creando to make public statements supporting MSAC and to engage in fundraising activities on MSAC's behalf.**

**ANSWER:**   CSC Defendants deny.

64.   **If Creando had known that MSAC and its partners Mses. Verma and Gale had already planned to operate a competing program, Creando would not have publicly supported MSAC, donated funds to its Capital Campaign that Mr. Poland spearheaded, or assisted with MSAC's fundraising efforts. The defendants intentionally withheld this information from Creando in order to obtain its assistance and public support. In doing so, the defendants caused Creando to unwittingly contribute substantial assistance to the defendants' efforts to harm Creando.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 64 relating to Creando's knowledge,

and therefore deny. CSC Defendants deny the remaining allegations in Paragraph 64.

> **B.**   **The Defendants Attempt to Copy Creando's Unique Five Senses Learning Approach**

65.   **The defendants' unlawful conduct did not stop at copying Creando's logo. They also attempt to copy the robust and unique educational programming developed by Creando.**

23

**ANSWER:**   CSC Defendants deny.

66.   **Prior to 2020, MSAC's after-school programming consisted solely of music and art classes.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 66, and therefore deny.

67.   **Prior to the summer of 2020, CSC's partners had the opportunity to observe Creando's teachers and staff employ the FSLA and learn about elements of FSLA through discussions with Creando's members, the Haygoods. Additionally, the defendants were able to read about Creando's programming through paper literature provided to them by Creando, as well as through Creando's website and on social media.**

**ANSWER:**   CSC Defendants deny.

68.   **Keenly aware of Creando's success, the defendants set about attempting to create an anglicized version of Creando's FSLA. Although they lacked the comprehensive understanding and secret methodology developed by Creando, they created a program that publicly represented itself to be identical to the FSLA in all aspects except bilinguality.**

**ANSWER:**   CSC Defendants deny.

69.   **In fact, CSC's website goes so far as to plagiarize the language found on Creando's website in an effort to convince the public that its program is a white-washed version of Creando's FSLA. Among other things, the CSC website uses similar (and in some places identical) language to the Creando website; claims to provide the same form of sense-learning education; seeks to enroll the same age group of children; seeks to enroll children from the same schools as Creando; provides the same hours of operation; copies Creando's pricing; offers the same extended care options as Creando; operates from the same building as Creando; and, offers the same bussing options as Creando.**

**ANSWER:**   CSC Defendants deny.

70.   **The defendants' public representations as to the similarity of the character and quality of the CSC programming to Creando's programming has caused and continues to cause consumer confusion. Significantly, students that had enrolled in Creando's educational programming have withdrawn their enrollment in Creando and instead enrolled in CSC programming.**

24

**ANSWER:**   CSC Defendants deny that they made any public representation as to similarity between the CSC programming and Creando's programming. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 70, and therefore deny

### C.     The Defendants Abuse the Nonprofit Tax Status of MSAC to Create an Unfair Financial Advantage for Themselves

71.     **Although the defendants have copied Creando's pricing model, they possess an incredible and unfair financial advantage.**

**ANSWER:**   CSC Defendants deny that they have copied Creando's pricing model. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 71, and therefore deny.

72.     **MSAC is recognized as a non-profit entity by the US Department of Revenue. In that capacity, MSAC can and does accept tax free donations from the public that it uses to pay for the space it rents from ULI**.

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 72, and therefore deny.

73.     **On information and belief, CSC constitutes a partnership entered into between MSAC and Defendants Verma and Gale. It charges the families of students the same prices that Creando charges for its programming. However, its operating costs are substantially lower than Creando's because it does not pay rent for the space that it uses.**

**ANSWER:**   CSC Defendants deny the first sentence of Paragraph 73.  Answering further, CSC Defendants state that CSC is not a legal partnership between MSAC and Defendants Verma and Gale; that CSC is not a formal entity but rather a trade name under which Defendants Verma and Gale do business; and that Defendants Verma and Gale have used the "Creative Soul" trade name since 2017.  CSC Defendants deny the

second sentence of Paragraph 73.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 73, and therefore deny.

74.  **On August 20, 2020, Creando engaged in a recorded conference call with MSAC, CSC, and ULI in an attempt to resolve Creando's concerns regarding CSC. During the call, Ms. Morrison from ULI affirmatively stated that CSC had not rented space from ULI, and confirmed that MSAC's lease with ULI was identical to Creando's lease and would not permit CSC to sublet space from MSAC without prior consent from ULI.   Moreover, she affirmed that under MSAC's lease, CSC could not affix its logo anywhere on the building, including within MSAC's rented space.**

**ANSWER:**  CSC Defendants admit that on August 20, 2020, Jamie Gale participated in a Zoom videoconference with Carey Zawlocki and Suzy Baldwin of MSAC, James Haygood and Grissel ("Gigi") Chacon of Creando, and Anne Neujahr Morrison of Urban Land Interests ("ULI"). To CSC Defendants' knowledge, the Zoom videoconference was not recorded. CSC Defendants admit that Ms. Neujahr Morrison confirmed in the videoconference that MSAC's lease with ULI did not permit CSC to sublet from MSAC but, answering further, CSC Defendants state that Ms. Neujahr Morrison stated that ULI did not consider CSC to be subletting space from MSAC for the purpose of the collaborative after-school program between MSAC and CSC, and that the collaborative after-school program between MSAC and CSC was permitted under MSAC's lease. CSC Defendants admit that Ms. Neujahr Morrison confirmed in the videoconference that CSC could not display its logo or exterior signage on the building located at 1732 Monroe Street but, answering further, CSC Defendants state that Ms. Neujahr Morrison did not state that CSC could not display its logo or other signage on the

interior of MSAC's leased space located at 1732 West Lawn Avenue, Madison, Wisconsin, 53711. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 72, and therefore deny.

75.   **During the call, Creando directly confronted the defendants concerning their use of MSAC's non-profit status to use community donations for the purpose of allowing CSC to operate with an unfair competitive advantage over Creando. The defendants did not deny this activity, but instead sought clarification from Ms. Morrison as to whether MSAC's lease with ULI specifically prohibited it. Ms. Morrison declined to provide a legal opinion as to this inquiry.**

**ANSWER:**  CSC Defendants admit that during the August 20, 2020 Zoom videoconference, James Haygood made comments about the tax code.  CSC Defendants admit that Ms. Neujahr Morrison confirmed in the videoconference that MSAC's lease with ULI did not permit CSC to sublet from MSAC but, answering further, CSC Defendants state that Ms. Neujahr Morrison stated that ULI did not consider CSC to be subletting space from MSAC for the purpose of the collaborative after-school program between MSAC and CSC, and that the collaborative after-school program between MSAC and CSC was permitted under MSAC's lease. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 72, and therefore deny.

## CLAIM I
### Misappropriation

76.   **Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.**

**ANSWER:**  CSC Defendants reallege and incorporate by reference their answers to the preceding paragraphs of the Amended Complaint as if set forth in full in response

to Paragraph 76.

77.     **Creando expended substantial time, labor, and money developing its branding and the FSLA.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 77, and therefore deny.

78.     **Creandos logos and branding, which are publicly recognized and associated with Creando and its FSLA methodology, are the product of more than seven years of effort, time, and funding to develop and promote.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 78, and therefore deny.

79.     **The FSLA is the product of more than 14 years of research and development, and the product of great sacrifice and effort by Creando and its members. It is a product that is objectively of great value in general, and subjectively of great value to Creando in particular.**

**ANSWER:**   CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 79, and therefore deny.

80.     **Notwithstanding the time, labor, and money expended by Creando, the Defendants have misappropriated all or some of Creando's branding and the FSLA to themselves. Without having expended the same or similar effort, the defendants have misappropriated the final products of the fruits of Creando's labor for themselves.**

**ANSWER:**   CSC Defendants deny.

81.     **In making such misappropriations, the defendants have entered into competition with Creando, seeking to acquire students who have enrolled with Creando, or are likely to enroll in the future.**

**ANSWER:**   CSC Defendants deny.

82.     **Creando has suffered, and is likely to continue to suffer commercial damage in the future, as a result of the defendants' misappropriation in an amount to be determined at trial.**

<u>**ANSWER:**</u>  CSC Defendants deny.

83.    **Creando is likely to continue suffering damage in the absence of an order barring the defendants from continuing to use the misappropriated logo, branding, and elements of the FSLA.**

<u>**ANSWER:**</u>  CSC Defendants deny.

## CLAIM II

### Violation of the Deceptive Trade Practices Act - Wis. Stat. § 100.18 as against MSAC

84.    **Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.**

<u>**ANSWER:**</u>  The allegations in Paragraph 84 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants reallege and incorporate by reference their answers to the preceding paragraphs of the Amended Complaint as if set forth in full in response to Paragraph 84.

85.    **During its capital campaign, MSAC, and its Capital Campaign Committee upon which its attorney Douglas Poland sits, sought to raise $850,000 to, among other things, support MSAC's efforts to relocate to 1722 Monroe Street.**

<u>**ANSWER:**</u>  The allegations in Paragraph 85 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants deny that MSAC's principal business address is 1722 Monroe Street, Madison, WI 53711. Answering further, CSC Defendants state that MSAC's principal business address is 1732 West Lawn Avenue, Madison, Wisconsin, 53711.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 85, and therefore deny.

29

86.     **On information and belief, MSAC represented to ULI that it would not engage in activity that competed with Creando. By making this representation, MSAC eliminated any resistance to its relocation to 1722 Monroe Street by another tenant of ULI in the same building. It also obtained ULI's apparently unwitting assistance in convincing Creando to financially support MSAC.**

**ANSWER:**   The allegations in Paragraph 86 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants deny that MSAC's principal business address is 1722 Monroe Street, Madison, WI 53711. Answering further, CSC Defendants state that MSAC's principal business address is 1732 West Lawn Avenue, Madison, Wisconsin, 53711.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 86, and therefore deny.

87.     **Through media release and public presentations by its agents, MSAC also represented to the public that it did not intend to engage in activity that competed with Creando. It did so by intentionally withholding information that it planned to launch a directly competing after-school program, knowing that in reality it had planned to do so long before it moved into 1722 Monroe Street.**

**ANSWER:**   The allegations in Paragraph 87 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants deny that MSAC's principal business address is 1722 Monroe Street, Madison, WI 53711. Answering further, CSC Defendants state that MSAC's principal business address is 1732 West Lawn Avenue, Madison, Wisconsin, 53711.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 87, and therefore deny.

88. **MSAC repeatedly represented to Creando that it would not engage in competitive activities or programming with Creando, even though it had already formed an intent to do so.**

**ANSWER:** The allegations in Paragraph 88 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 88, and therefore deny.

89. **MSAC's public representations were made, published, and placed before one or more members of the public, including Creando and its members, in the form of conversations, speeches, presentations, advertisements, blog posts, and social media posts.**

**ANSWER:** The allegations in Paragraph 89 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 89, and therefore deny.

90. **MSAC's representations were false. Although MSAC represented to Creando, ULI, and the public at large that it did not intend to engage in activities that compete with Creando, MSAC did -- in fact -- intend to do so at the time it made such representations. MSAC had not only formed an intent to do so, but on information and belief had already entered into discussions and activities with Defendants Verma and Gale to form CSC.**

**ANSWER:** The allegations in Paragraph 90 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants state that Defendant Gale first spoke with a representative of MSAC about the possibility of little om BIG OM providing yoga classes at MSAC in February 2020, and that Defendant Gale first spoke with a representative of MSAC about the possibility of little om BIG OM participating in an

after-school program at MSAC in March 2020. CSC Defendants further state that they first proposed a collaborative after-school program to MSAC that included Defendant Verma and the "Creative Soul" trade name in June 2020.  Answering further, Defendants Verma and Gale state that they have used the "Creative Soul" trade name since 2017. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 90, and therefore deny.

91.   **As a result of MSAC's false representations, they induced Creando to donate money to MSAC; host fundraisers for MSAC; and promote MSAC's Capital Campaign on Creando's social media sites.**

**ANSWER:**  The allegations in Paragraph 91 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 91, and therefore deny.

92.   **Further, if MSAC had disclosed its true activities and intentions, Creando would not have removed its objection to MSAC renting space in the same facility. This in turn would have forced ULI to decide whether it preferred to have MSAC as a tenant or Creando. Regardless of ULI's ultimate choice, Creando would not have entered into a lease to be a tenant in the same building as CSC and MSAC. However, because MSAC withheld this material information for the purpose of deceiving ULI and Creando, Creando executed a lease agreement with ULI and paid substantial funds to build out its location.**

**ANSWER:**  The allegations in Paragraph 92 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants deny that CSC is "a tenant in the same building" as Creando.  Answering further, CSC Defendants state that CSC conducts the after-school program in collaboration with MSAC at MSAC's leased space located at 1732 West

Lawn Avenue, Madison, Wisconsin, 53711.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 92, and therefore deny.

93.   **Further, MSAC's assurances induced Creando to provide the defendants with access to observe aspects of its unique educational programming, FSLA. MSAC then used this access to further its effort to misappropriate aspects of the FSLA for its own purposes.**

**ANSWER:**  The allegations in Paragraph 93 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants deny they have been provided "with access to observe aspects of [Creando's] unique educational programming, FSLA."  Answering further, CSC Defendants state that on May 6, 2014, in exchange for writing a single blog post on Madison Mom's Blog, Defendant Verma was permitted to attend one toddler and preschooler Spanish class at a Creando facility located at 412 Baldwin Street, Madison, Wisconsin, with her two children, who were then ages 2 and 5 years old. The class instructor spoke in Spanish during the entire class, and that the children in attendance read books and painted a picture.  At no point did the instructor speak to Defendant Verma or provide her with any information. Defendant Verma attended the single class on May 6, 2014, and wrote the blog post a day or two later.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 93, and therefore deny.

94.   **Creando has been damaged by MSAC's false statements in an amount to be determined at trial.**

**ANSWER:**  The allegations in Paragraph 94 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants deny.

## CLAIM III
### Violation of the Deceptive Trade Practices Act - Wis. Stat. § 100.18 as against All Defendants

95.  **Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.**

**ANSWER:**  CSC Defendants reallege and incorporate by reference their answers to the preceding paragraphs of the Amended Complaint as if set forth in full in response to Paragraph 95.

96.  **The defendants maintain a website and engage in various advertising activities pursuant to which they promote CSC's after-school programming. By and through their co-opting of Creando's likeness, logo, and branding, the defendants represent to the public that they are affiliated with Creando and/or offer educational programming that is the same or similar to that offered by Creando. The defendants' public representations are bolstered by the fact that they operate from the same building as Creando, and were able to convince (through their deceptions) Creando to promote and advertise on their behalf. Further, the defendants claims are also bolstered by the fact that the CSC website uses similar (and in some places identical) language to the Creando website; claims to provide the same form of sense-learning education; seeks to enroll the same age group of children; seeks to enroll children from the same schools as Creando; provides the same hours of operation; copies Creando's pricing; offers the same extended care options as Creando; operates from the same building as Creando; and, offers the same bussing options as Creando.**

**ANSWER:**  CSC Defendants admit they maintain a website and engage in various advertising activities pursuant to which they promote CSC's after-school programming. Answering further, CSC Defendants state that CSC conducts the after-school program in collaboration with MSAC at MSAC's leased space located at 1732

West Lawn Avenue, Madison, Wisconsin, 53711, which is located in the same building as Creando. CSC Defendants deny the remaining allegations in Paragraph 96.

97.     **Notwithstanding these public statements, the defendants do not offer programming that is the same or similar to that of Creando's. They cannot, of course, do so, because Creando's programming is the subject of more than 14 years of research and development that has been distilled into the FSLA, which consists of a methodology that Creando does not make, and has not made, publicly available.**

**ANSWER:**  CSC Defendants admit they do not offer programming that is the same or similar to that of Creando's. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 97, and therefore deny.

98.     **Notwithstanding that the defendants' public representations are false, members of the public have been and continue to be deceived by the defendants. Among other things, a number of students that had enrolled at Creando have withdrawn their enrollment in favor of enrolling at CSC. As a result, the defendants' misrepresentations have damaged Creando in an amount to be determined at trial.**

**ANSWER:**  CSC Defendants deny that they have made any misrepresentations as alleged in Paragraph 98, and further deny that they have caused any damage to Creando. CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 98, and therefore deny.

## CLAIM IV
### Negligent Misrepresentation

99.     **Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.**

**ANSWER:**  The allegations in Paragraph 99 are directed towards Defendant

MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants reallege and incorporate by reference their answers to the preceding paragraphs of the Amended Complaint as if set forth in full in response to Paragraph 99.

100. **MSAC represented to Creando that, among other things, it would not enter into direct competition with Creando next door to Creando's new 1716 Monroe Street address.**

**ANSWER:** The allegations in Paragraph 100 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 100, and therefore deny.

101. **Creando reasonably relied on these statements and cooperated with MSAC in its capital campaign by giving money to MSAC, hosting fundraising events for MSAC in Creando's new workspaces, and sharing with MSAC's employees Creando's unique educational programming model and instructional and advertising materials.**

**ANSWER:** The allegations in Paragraph 101 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 101, and therefore deny.

102. **On information and belief, at the time MSAC represented to Creando that it would not enter into competition with it, MSAC had already been working to develop a partnership with CSC, Verma, and Gale to offer programming that would compete with Creando.**

**ANSWER:** The allegations in Paragraph 102 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an

answer is required, CSC Defendants state that Defendant Gale first spoke with a representative of MSAC about the possibility of little om BIG OM providing yoga classes at MSAC in February 2020, and that Defendant Gale first spoke with a representative of MSAC about the possibility of little om BIG OM participating in an after-school program at MSAC in March 2020. CSC Defendants further state that they first proposed a collaborative after-school program to MSAC that included Defendant Verma and the "Creative Soul" trade name in June 2020.  Answering further, CSC Defendants state that Defendants Verma and Gale have used the "Creative Soul" trade name since 2017.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 102, and therefore deny.

103.  **MSAC's representations to Creando concerning its intent and actions to engage in direct competition were false.**

**ANSWER:**  The allegations in Paragraph 103 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 103, and therefore deny.

104.  **MSAC knew or should have known that the statements it made to Creando were false. MSAC failed to exercise ordinary care in making these representations to Creando.**

**ANSWER:**  The allegations in Paragraph 104 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 104, and therefore deny.

37

105. **By reason of MSAC's misrepresentations, Creando has been harmed in an amount to be determined at trial.**

**ANSWER:** The allegations in Paragraph 105 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 105, and therefore deny.

## CLAIM V
### Strict Liability Misrepresentation as against Defendant MSAC

106. **Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length**.

**ANSWER:** The allegations in Paragraph 106 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants reallege and incorporate by reference their answers to the preceding paragraphs of the Amended Complaint as if set forth in full in response to Paragraph 106.

107. **MSAC represented to Creando that, among other things, it would not enter into direct competition with Creando next door to Creando's new 1716 Monroe Street address.**

**ANSWER:** The allegations in Paragraph 107 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 107, and therefore deny.

108. **Creando reasonably relied on these statements and cooperated with MSAC in its capital campaign by giving money to MSAC, hosting fundraising events for MSAC in Creando's new workspaces, and sharing with MSAC's**

38

**employees Creando's unique educational programming model and instructional and advertising materials.**

      **ANSWER:**  The allegations in Paragraph 108 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 108, and therefore deny.

      109.  **MSAC's representations were false. On information and belief, at the time it represented to Creando that MSAC would not enter into competition with it, MSAC had already been working to develop a partnership with CSC, Verma, and Gale to offer programming that would compete with Creando.**

      **ANSWER:**  The allegations in Paragraph 109 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants state that Defendant Gale first spoke with a representative of MSAC about the possibility of little om BIG OM providing yoga classes at MSAC in February 2020, and that Defendant Gale first spoke with a representative of MSAC about the possibility of little om BIG OM participating in an after-school program at MSAC in March 2020. CSC Defendants further state that they first proposed a collaborative after-school program to MSAC that included Defendant Verma and the "Creative Soul" trade name in June 2020.  Answering further, CSC Defendants state that Defendants Verma and Gale have used the "Creative Soul" trade name since 2017.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 109, and therefore deny.

110. **MSAC's representations and lies by omission were based upon its personal and, at the time, non-public knowledge. It was therefore uniquely situated to ascertain the truth of the facts related to its representations.**

**ANSWER:** The allegations in Paragraph 110 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 110, and therefore deny.

111. **MSAC had an economic stake in Creando's belief and reliance upon its representations. Among other things, in reliance upon MSAC's false statements Creando not only made monetary donations to MSAC, but also assisted MSAC with its capital campaign as well as larger fundraising efforts and also withdrew its objection to ULI renting to MSAC.**

**ANSWER:** The allegations in Paragraph 111 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 111, and therefore deny.

112. **By reason of MSAC's misrepresentations, Creando has been harmed in an amount to be determined at trial.**

**ANSWER:** The allegations in Paragraph 112 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 112, and therefore deny.

## CLAIM VI
### Intentional Misrepresentation as against Defendant MSAC

113. **Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.**

40

**ANSWER:**  The allegations in Paragraph 113 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants reallege and incorporate by reference their answers to the preceding paragraphs of the Amended Complaint as if set forth in full in response to Paragraph 113.

114.   **MSAC represented to Creando that, among other things, it would not enter into direct competition with Creando next door to Creando's new 1716 Monroe Street address.**

**ANSWER:**   The allegations in Paragraph 114 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 114, and therefore deny.

115.   **MSAC's representations were false. At the time MSAC represented to Creando that it would not enter into competition with Creando, MSAC had already been working to develop a directly competing after-school program and partnership with CSC, Verma, and Gale to offer programming that would compete with Creando.**

**ANSWER:**  The allegations in Paragraph 115 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants state that Defendant Gale first spoke with a representative of MSAC about the possibility of little om BIG OM providing yoga classes at MSAC in February 2020, and that Defendant Gale first spoke with a representative of MSAC about the possibility of little om BIG OM participating in an after-school program at MSAC in March 2020. CSC Defendants further state that they

41

first proposed a collaborative after-school program to MSAC that included Defendant Verma and the "Creative Soul" trade name in June 2020.   Answering further, CSC Defendants state that Defendants Verma and Gale have used the "Creative Soul" trade name since 2017.  CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 115, and therefore deny.

116.   **MSAC made its representations to Creando knowing them to be false, or made them recklessly without caring whether they were true or false.**

**ANSWER:**  The allegations in Paragraph 116 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 116, and therefore deny.

117.   **MSAC made its representations to Creando with the intent to defraud Creando and cause Creando to act upon them. Creando reasonably relied on these statements and cooperated with MSAC in its capital campaign by giving money to MSAC, hosting fundraising events for MSAC in Creando's new workspaces, and sharing with MSAC's employees Creando's unique educational programming model and instructional and advertising materials.**

**ANSWER:**  The allegations in Paragraph 117 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 117, and therefore deny.

118.   **By reason of MSAC's misrepresentations, Creando has been harmed in an amount to be determined at trial.**

**ANSWER:**   The allegations in Paragraph 118 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an

answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 118, and therefore deny.

**CLAIM VII**

**Promissory Estoppel as Against Defendant MSAC**

119.   **Creando realleges and incorporates by reference the preceding paragraphs of the complaint as if set forth at length.**

**ANSWER:**   The allegations in Paragraph 119 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants reallege and incorporate by reference their answers to the preceding paragraphs of the Amended Complaint as if set forth in full in response to Paragraph 119.

120.   **MSAC promised Creando that it would not engage in activities and programming that are competitive to Creando's programming.**

**ANSWER:**   The allegations in Paragraph 120 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 120, and therefore deny.

121.   **MSAC reasonably should have expected that its promises would include action on the part of Creando.**

**ANSWER:**   The allegations in Paragraph 121 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 121, and therefore deny.

122.   **MSAC's promises induced Creando to, among other things, provide financial support to MSAC and assist MSAC with its capital campaign.**

**ANSWER**:   The allegations in Paragraph 122 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 122, and therefore deny.

123.   **Creando's reliance upon the promises of MSAC was reasonable**.

**ANSWER:**   The allegations in Paragraph 123 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 123, and therefore deny.

124.   **Creando's reliance upon the promises has now caused it substantial harm.**

**ANSWER:**   The allegations in Paragraph 124 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 124, and therefore deny.

125.   **The promises of MSAC must be enforced to avoid injustice.**

**ANSWER:**   The allegations in Paragraph 125 are directed towards Defendant MSAC and therefore no answer is required from the CSC Defendants. To the extent an answer is required, CSC Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 125, and therefore deny.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays for judgment in its favor and against the defendants with respect to all the foregoing claims as follows:

A.      Awarding an order enjoining each defendant, its servants, agents and employees, and all other persons in active concert or participation with any defendant and its successors and assigns, from directly or indirectly:

1.      using, reproducing, creating, distributing, or publicly displaying any of Creando's logos or branding, including without limitation its service marks, logos, or trade dress, including the essential elements thereof, in the advertising (including on the Internet), promotion, or rendering of its services;

2.      expressly or impliedly representing itself to customers, potential customers, or the public to be affiliated in any way with Creando; or that they in any way developed or have authority to use the FSLA.

3.      representing by words or conduct that any service provided, offered for sale, sold, advertised, or rendered by the defendants is authorized, sponsored, or endorsed by or otherwise connected with Creando;

4.      competing unfairly with Creando in any manner by improperly using any Creando service mark, logo, or trade dress, or any

colorable imitation of any of them, and/or any mark that is likely to cause consumer confusion as to the source of the respective defendants' services;

B.      Awarding the plaintiff its actual and consequential damages jointly and severally from the defendants in an amount to be determined at trial;

C.      Awarding the plaintiff its statutory double damages jointly and severally from the defendants pursuant to Wis. Stat. § 100.18;

D.      Awarding the plaintiff punitive damages from Defendant MSAC in an amount to be determined at trial pursuant to its claim for intentional misrepresentation;

E.      An order awarding the plaintiff its costs and fees, including its actual attorneys' fees as permitted pursuant to Wis. Stat. 100.18, jointly and severally from the defendants;

F.      An order awarding the plaintiff such other relief as the court may find just and appropriate.

**ANSWER:**   The Prayer for Relief and WHEREFORE CLAUSE are procedural, to which no response is required. To the extent a response is required, CSC Defendants deny that they have misappropriated from Creando, have violated Wis. Stat. §100.18, or are liable to Creando under any state or federal law, whether as alleged in the Amended Complaint or otherwise, and deny that Creando is entitled to injunctive relief, money

46

damages, statutory relief, punitive damages, costs of this action, attorney's fees, or any other form of relief from the CSC Defendants in this action.

## AFFIRMATIVE DEFENSES

In addition to the answers to Plaintiff's allegations and the factual and legal denials stated above, Defendants, Tara Verma, Jamie Gale, and Creative Soul Club (collectively, the "CSC Defendants"), by their attorneys Stafford Rosenbaum LLP, assert the following Affirmative Defenses to plaintiffs' First Amended Complaint, without assuming the burden of proof where placed upon Plaintiff by law.  CSC Defendants reserve the right to amend these Affirmative Defenses with additional defenses as further information is obtained.

### First Affirmative Defense

Plaintiff has failed to allege an injury caused by the alleged misappropriation or Wis. Stat. § 100.18 violations by CSC Defendants. Plaintiff has failed to state with specificity CSC Defendants' alleged violation under Wis. Stat. § 100.18.

### Second Affirmative Defense

The CSC Defendants acted in good faith with reasonable motive. They did not willfully, intentionally, or knowingly misappropriate from Plaintiff or violate Wis. Stat. § 100.18.

### Third Affirmative Defense

Plaintiff's claims and requests for relief are barred in whole or in part because its alleged injuries were not proximately caused by any unlawful acts of the CSC Defendants.

47

### Fourth Affirmative Defense

Plaintiff's claims and requests for relief are barred in whole or in part by its failure to mitigate its alleged damages.

### Fifth Affirmative Defense

Plaintiff's claims and requests for relief are barred in whole or in part by the doctrines of release, waiver, unclean hands, and/or laches.

### Sixth Affirmative Defense

Plaintiff's claims I and III are pre-empted by the Copyright Act of 1976, under which Plaintiff fails to state a claim.

### Seventh Affirmative Defense

Plaintiff fails to state a claim upon which relief may be granted against the CSC Defendants.

### Eighth Affirmative Defense

To the extent that Plaintiff's Amended Complaint alleges that the CSC Defendants have infringed upon Plaintiff's intellectual property rights in violation of the Copyright Act of 1976, CSC Defendants' actions are permissible fair use under 17 U.S.C. § 107.

### PRAYER FOR RELIEF

WHEREFORE, Defendants, Tara Verma, Jamie Gale, and Creative Soul Club demand judgment dismissing the Plaintiff's Amended Complaint against them with prejudice, and awarding CSC Defendants their costs, attorney's fees, and disbursements incurred in this action as allowed by law, and awarding CSC Defendants such other relief

48

as the Court deems just and equitable.

Dated:  April 19, 2021

STAFFORD ROSENBAUM LLP

By:  */s/ Douglas M. Poland*
Douglas M. Poland
SBN 1055189
Seep Paliwal
SBN 1091325

*Attorneys for defendants, Tara Verma, Jamie Gale, and Creative Soul Club*

222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI 53701-1784
dpoland@staffordlaw.com
spaliwal@staffordlaw.com
608.256.0226

49